**Bohumil J. DUSANEK,**
**Plaintiff-Appellee,**

v.

**Joseph P. HANNON, Raymond C. Principe, John O'Donnell, M.D., and The Board of Education of The City of Chicago, Defendants-Appellants.**

Nos. 80–1988, 81–1527.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1982.

Decided April 26, 1982.

Rehearing Denied June 28, 1982.

William J. Quinlan, Chicago, Ill., for appellant.

Kathrin A. Koenig, De Jong, Poltrock & Giampietro, Chicago, Ill., for appellee.

Before PELL, Circuit Judge, MARKEY, Chief Judge,* and SPRECHER, Circuit Judge.

PELL, Circuit Judge.

The appellee brought this action seeking injunctive relief and damages pursuant to 42 U.S.C. § 1983 (1976). The appellee's due process claim is that his employer, the appellant Board of Education of the City of Chicago (the "Board"), and the appellants Joseph P. Hannon, Raymond C. Principe, and Dr. John O'Donnell, acting in the scope of their employment with the Board in their positions as Superintendent, Director of Teacher Personnel and Staff Psychiatrist, respectively, deprived him of his property interest in his employment without providing a hearing. On May 6, 1980, the jury rendered a verdict in favor of the appellee against the Board and Dr. O'Donnell only. Subsequently, on the appellee's motion for a permanent injunction seeking to reinstate the appellee in his former teaching position, the district court ordered the parties on June 6, 1980 to proceed pursuant to the Board's rules to obtain the opinion of an independent physician as to the appellee's mental health. Based on the report subse-

quently submitted to the court, the court denied the appellee's motion for injunctive relief seeking reinstatement in his former position. Both the appellee and the appellants filed post-trial motions for attorney's fees pursuant to 42 U.S.C. § 1988 (1976). The district court granted the appellee's motion for attorney's fees and denied that of the appellants.

In No. 80–1988, the appellants are seeking reversal of the jury verdict and the district court's rulings on the post-trial motions for attorney's fees. Consolidated with that appeal is the appeal from the district court's denial of the appellee's motion for permanent injunctive relief in No. 81–1527. The threshold issue for our resolution is whether the actions of the Board and its employees did, indeed, result in a deprivation of due process under the Fourteenth Amendment.

I. Factual Background

   A. The Statutory and Administrative Procedure for Teachers' Leaves of Absence for Illness.

According to Principe's testimony and Board Rule 4–44, when a principal has reason to believe that a teacher has a health problem which may impair his or her efficiency, the principal may send a letter to the Department of Personnel requesting that the General Superintendent schedule a health examination for the employee. If the District Superintendent agrees to the request, a form letter is prepared for the Superintendent's signature. When signed, the letter is then sent to the employee directing him or her to appear for a health examination. If the Board's Medical Director, who is responsible for these health examinations, determines that the employee does not meet the medical standard for teaching, the Director reports the results to the Department of Personnel. The Department then notifies the employee by a form letter of the result of the examination. If the employee failed to meet the medical standard for teaching, the form letter requests the employee to execute an illness

---

* Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is       sitting by designation.

leave of absence and to contact the Board's office to arrange another health examination if he or she wishes to obtain reinstatement. The form letter also states:

> Please be advised that if you fail to request an illness leave of absence within ten business days from the date of this letter, it will be recommended that your services be terminated in accordance with State Statute.

The procedure for removal of a tenured teacher for cause is governed by the Illinois School Code, Ill.Rev.Stat. ch. 122, § 34–85 (1975), which provides, *inter alia*, an opportunity for a hearing prior to removal with resort to judicial review.

Board Rule 4–33 governs the duration of teachers' leaves of absence for illness. Any teacher who is granted a leave of more than five school months is required to pass a health examination by a medical examiner selected by the Board's General Superintendent prior to reinstatement. If the teacher fails the health examination, he may request an additional medical opinion as provided by Board Rule 4–19. Rule 4–19 allows the teacher to request an additional medical opinion within ten days from the notice of having failed the Board's examination. If the two medical opinions are in disagreement, a third medical opinion is obtained in the same manner and the majority opinion of the examiners is final.

### B. The Appellee's Examination and Leave of Absence.

From September, 1964 to March, 1977, the appellee Dusanek was a tenured teacher at Schurz High School in Chicago. On March 2, 1977, Dusanek complained to the principal, Dr. James Maloney, about a student in his class. Dusanek told Dr. Maloney that a new girl in his class was there to disrupt his class and turn the other students against him. He claimed to know her purpose in his class because she had been involved in this same behavior in one of his classes sometime between 1967 and 1969. At that time, according to Dusanek, she had been accompanied by a heavy-set woman in bib overalls about six feet six inches tall.

Dr. Maloney asked Dusanek to put his observations in a memorandum, which Dusanek subsequently did. Dr. Maloney also testified that he noted in the meeting that Dusanek was staring over his shoulder and appeared uneasy and apprehensive.

Dr. Maloney then examined the school records of the student about whom Dusanek had complained, from which he determined that she was born in 1960 and appeared to be about sixteen or seventeen years old. He also talked to two teachers about Dusanek. The information they provided about Dusanek tended to support Dr. Maloney's initial impression of Dusanek's psychological condition. As a result of his investigation, Dr. Maloney wrote the Assistant Superintendent of the Personnel Department requesting that the General Superintendent schedule a health examination for Dusanek.

Thereafter Principe, the Director of the Board's Bureau of Teacher Personnel, received Dr. Maloney's letter requesting an examination of Dusanek. After consulting with Dr. Maloney, he directed his secretary to prepare a form letter dated March 14, 1977, to be signed by Superintendent Hannon, directing Dusanek to report to the Board's offices on March 28, 1977, for an examination. The letter was subsequently signed by the Superintendent and sent to Dusanek.

The appellant, Dr. John O'Donnell, conducts psychiatric examinations for the Board. Prior to Dusanek's examination, he contacted Dr. Maloney who informed him of his conversation with Dusanek and the results of his investigation. On March 28, 1977, Dr. O'Donnell examined Dusanek and concluded that Dusanek was not in satisfactory psychological condition to continue his teaching duties. Dusanek was informed of his failure to meet the medical standard for teaching in a form letter dated March 29, 1977. It was this form letter which directed Dusanek to execute the enclosed request for a leave of absence for illness within ten days from the date of the letter, or it would be recommended that his services be terminated in accordance with the procedures of the state statute governing removal of ten-

ured teachers. On April 5, 1977, Dusanek executed the request for a leave of absence due to illness. Dating from March 29, 1977, Dusanek was placed on a leave of absence.

At Dusanek's request, Dr. O'Donnell gave him a second examination in July, 1977. Dr. O'Donnell found that Dusanek was not in condition to return to his position, and concluded that Dusanek should continue in therapy with his own psychiatrist who had been treating Dusanek for several years. In a letter dated August 19, 1977, Dusanek was again informed that he did not meet the medical standard for teaching. The letter also requested that Dusanek execute the enclosed request for a leave of absence, which Dusanek did. On October 27, 1977, Dusanek filed this suit claiming the Board and its employees had deprived him of a property interest in his employment without due process.

C. The Report of Dr. John Hanni Pursuant to the District Court's Order.

Prior to ruling on the appellee's post-trial motion for injunctive relief seeking reinstatement, the district court ordered the parties to proceed pursuant to Board Rules 4–33 and 4–19 to obtain an independent medical opinion as to Dusanek's ability to return to his position. Dr. John W. Hanni submitted his report on Dusanek to the court on March 13, 1981. He concluded that Dusanek suffered from a "paranoid schizophrenic disorder which is chronic, with marked impairment of social functioning." He also concluded that Dusanek's mental condition at the time of Dr. Hanni's examination had existed since at least March of 1977, but was "obviously of longer duration." Based on Dr. Hanni's report, the district court denied Dusanek's motion for injunctive relief seeking reinstatement.

II. Dusanek's Claim of Denial of Due Process.

■ Dusanek's position as a tenured teacher was sufficient to create an entitlement to a property interest under the law of Illinois. Having created such an entitlement, the state could not deprive Dusanek of his position without first affording him due process. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ There is no question that the Board and its employees complied with the Board's rules and the state statutes in their procedural treatment of Dusanek. We do not find this statutory and administrative procedure to be somehow arbitrary or unreasonable.

■ There is nothing unconstitutional about a state establishing a tenure system in which the state retains the prerogative to discontinue the teaching duties of teachers who are not physically or mentally competent to continue teaching. In any such system, some school official must be lodged with the preliminary authority to request a medical investigatory procedure. The Illinois procedure whereby certain school authorities can require teachers who may have medical difficulties to submit to medical examinations obviously serves strong state interests. Only disabilities which impair the efficiency of a teacher may be the basis for requiring a health examination, and a health examination must be conducted before a teacher is asked to request a leave of absence. When the result of that medical examination is adverse to a teacher, the Illinois procedure permits the teacher either to request a medical leave of absence, or to fight his or her removal by refusing to take such a leave, thereby triggering rights to a hearing. The teacher is given the option of a hearing before any property interest is taken away. Certainly the facts in the record support Dr. O'Donnell's conclusions and the principal's original decision to commence the process that resulted in Dusanek's medical examination. We are of the opinion that these procedures are all that Illinois need reasonably provide to assure a fair and reasonable determination satisfying due process.

■ Dusanek contends that the March 29 letter compelled him to take a leave of absence. The availability of recourse to a

constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure. *See, e.g., Palma v. Powers,* 295 F.Supp. 924, 940 (N.D.Ill.1969); *Marlowe v. Village of Wauconda,* 91 Ill.App.3d 874, 883, 47 Ill.Dec. 655, 415 N.E.2d 660 (1981); *Rawlings v. Illinois Department of Law Enforcement,* 73 Ill.App.3d 267, 275, 29 Ill.Dec. 333, 391 N.E.2d 758 (1979); *cf. Brooks v. Board of Trustees of the University of Illinois,* 90 Ill.App.3d 591, 592, 46 Ill.Dec. 73, 413 N.E.2d 513 (1980). These decisions do not amount to a requirement of exhaustion of administrative remedies as a predicate to a section 1983 claim. Rather, they express the logical proposition that a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. Because the procedural protections existed, the state cannot be accused of withholding them in a section 1983 suit. *Cf. Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

■ We conclude that it is not a deprivation of due process of law to be put to the option of defending oneself in a proper dismissal hearing or voluntarily accepting a change in one's job status, when the state's action in first initiating the medical investigation is reasonable and in full compliance with the conditions of the teacher's tenure. Significantly, the letter states only that dismissal proceedings would be *recommended* if Dusanek failed to request a leave of absence. The appellant has suggested that continued performance of his duties in the face of the letter's directive would have been grounds for removal for cause, the cause being insubordination. This assertion is unsupported by the record. Moreover, we see nothing in the Board's rules or the state statute which would have precluded Dusanek from demonstrating his competency in a removal hearing.

■ This question of coercion by the state resulting in a deprivation of procedural rights may best be analogized to those cases in which a government employee seeks procedural review of his or her resignation as a "discharge" coerced by the actions of the federal government. As stated in *Paroczay v. Hodges,* 219 F.Supp. 89, 90 (D.D.C.1963), "[i]f the resignation was involuntarily given ... then plaintiff's separation from government employment constituted a discharge, and he would be entitled to certain procedural rights ...." These cases indicate that a resignation resulting from a choice between resigning or facing proceedings for dismissal is not tantamount to discharge by coercion without procedural review if the employee is given sufficient time and opportunity for deliberation of the choice posed. *See, e.g., Dabney v. Freeman,* 358 F.2d 533 (D.C.Cir.1959); *Competello v. Jones,* 267 F.2d 689 (D.C.Cir. 1959); *Paroczay v. Hodges,* 219 F.Supp. 89 (D.D.C.1963); *see also Molinar v. Western Electric Co.,* 525 F.2d 521 (1st Cir. 1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976) (applying New York law); *Johnson v. General Motors Corp.,* 144 Ga.App. 305, 241 S.E.2d 30 (1977) (applying Georgia law), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978); *Wilkinson v. Trust Co. of Georgia Association,* 128 Ga.App. 473, 197 S.E.2d 146 (1973) (applying Georgia law).

III. Conclusion.

■ For these reasons, we conclude that there was no denial of due process by the state and, accordingly, reverse the judgment in No. 80–1988 and the district court's award of attorney's fees to the appellee. We affirm the district court's denial of the appellee's post-trial motion for permanent injunctive relief seeking reinstatement in No. 81–1527. We affirm the district court's denial of attorney's fees to the appellant as the district court did not abuse its discretion in concluding that the action was not frivolous, unreasonable, or without foundation. *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir. 1981).