CHEMREX, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 1—93—0804

Opinion filed December 28, 1993.—Rehearing denied February 10, 1994.

McDermott, Will & Emery, of Chicago (William Schuman and Todd Wiener, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of counsel), for respondents.

JUSTICE HARTMAN delivered the opinion of the court:

This is a direct review, under Supreme Court Rule 335 (134 Ill. 2d R. 335), by ChemRex, Inc. (ChemRex), of a final order of the Illinois Pollution Control Board (Board) affirming an earlier decision by the Illinois Environmental Protection Agency (IEPA) denying eligibility for reimbursement from the Underground Storage Tank Fund (Fund) (415 ILCS 5/22.18b(a) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111½, par. 1022.18b(a))) for cleanup and corrective action costs. The issues raised here are whether (1) application of an amendment to the Illinois Environmental Protection Act violates ChemRex's right to due process under the United States Constitution and the Constitution of the State of Illinois; and (2) application of an amendment to the Illinois Environmental Protection Act violates the prohibition against laws impairing the obligation of contracts under the United States Constitution and the Constitution of the State of Illinois.

The operative facts are uncontested; both ChemRex and IEPA have stipulated all relevant facts presented to the Board. ChemRex owned eight underground storage tanks located at 415 East 16th Street, Chicago Heights, Illinois, consisting of one gasoline tank, two xylene tanks and five tanks containing nonhazardous, petroleum-based solvents. ChemRex registered these storage tanks and paid the requisite fees in accordance with the Illinois Environmental Protection Act (Act) (415 ILCS 5/1 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1001 *et seq.*)). Under the Act, all registration fees are deposited into the Underground Storage Tank Fund. (415 ILCS 5/22.13(a) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1022.13(a)).) One of the purposes of the Fund is to indemnify underground storage tank operators for corrective action costs, provided they meet certain eligibility requirements. (415 ILCS 5/22.13(a)(5) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1022.13(a)(5)).) Prior to September 6, 1991, the statute set forth the following eligibility criteria:

"An owner or operator is eligible to receive money from the Underground Storage Tank Fund for costs of corrective action or indemnification only if all of the following requirements are satisfied:

(1) Neither the owner nor operator of the underground storage tank is the United States Government.

(2) The underground storage tank does not contain fuel which is exempt from the provisions of Section 2a of The Motor Fuel Tax Law.

(3) The costs of corrective action or indemnification were incurred by an owner or operator as a result of a release of petroleum, but not including any hazardous substance, from an underground storage tank.

(4) The owner or operator has registered the tank *** and paid into the Underground Storage Tank Fund all fees required for the tank ***." 415 ILCS 5/22.18b(a) (West 1992) (formerly Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, par. 1022.18b(a)).

In addition, those who qualify for access to the Fund may satisfy Federal financial responsibility requirements. (415 ILCS 5/22.13(d) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1022.13(d)).) In the spring of 1991, ChemRex complied with Federal and State financial responsibility regulations governing the five tanks containing petroleum-based solvents on the basis of having met the requirements necessary for eligibility under the Fund. (40 C.F.R. § 280.90 *et seq.* (1992); 415 ILCS 5/22.13(d), 5/22.18b (West 1992) (formerly Ill. Rev. Stat. 1989, ch. 111$^1$/$_2$, pars. 1022.13(d), 1022.18b).) ChemRex did not obtain private insurance coverage for potential leaks from these tanks because of its participation in the Fund.

On March 15, April 2 and April 3, 1991, ChemRex discovered releases from the eight underground storage tanks and reported them within 24 hours to the Illinois Emergency Services and Disaster Agency. ChemRex immediately took corrective action at these sites. ChemRex also timely submitted a "Twenty-day Report," in compliance with IEPA's Guidance Manual For Petroleum-Related LUST Cleanups In Illinois (the Guidance Manual), as well as a "Forty-five Day Free Product Action Report," in compliance with the Guidance Manual. ChemRex additionally timely submitted to IEPA a "Leaking Underground Storage Tank Investigation Work Plan" and "Health and Safety Plan" (jointly, the Work Plan), in compliance with the Guidance Manual. These reports provided IEPA with additional extensive information regarding the nature and extent of the releases from the underground storage tanks and the scope of the risks posed by the releases.

Notwithstanding its activities, reports and plans in compliance with the statutes and regulations, ChemRex was denied reimbursement for the five tanks containing petroleum-based solvents, based upon a September 6, 1991, amendment to the Illinois Environmental Protection Act. This amendment changed eligibility for the Fund to release of petroleum from one or more of the following categories:

"(A) Fuel, as that term is defined in Section 1.19 of the Motor Fuel Tax Law.

(B) Aviation fuels, heating oil, or kerosene.

(C) Used oil. For purposes of this Section, 'used oil' means any oil that has been refined from crude oil used in a motor vehicle, as that term is defined in Section 1.3 of the Motor Fuel Tax Law, and that, as a result of that use, is contaminated by physical or chemical impurities." Pub. Act 87—323, § 1, eff. September 6, 1991 (amending 415 ILCS 5/22.18b(a) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1022.18b(a))).

On August 31, 1992, ChemRex petitioned the Board for review, arguing that its eligibility for reimbursement from the Fund should be determined by the statutory criteria in effect when it notified the IEPA of the leaks and took action to ameliorate the condition. The Board acknowledged that where a statutory amendment involves a prior activity, the applicable law is that in effect at the time the activity occurred, but took the position that a prior activity was not involved here; instead, the Board read the statute as having narrowed the criteria for access to the Fund. The Board unanimously affirmed the IEPA's decision, on the sole ground that the law in effect on the date ChemRex filed its application for reimbursement controlled the eligibility determination, which no longer covered tanks containing

the type of fluids which months before had leaked from the ChemRex tanks. As a result of being barred from reimbursement, ChemRex seeks review.

ChemRex first argues that the Board and IEPA (collectively respondents) erred by applying the September 1991 amendment to the Act retroactively, thus depriving it of due process of law, because neither the Act's express language nor legislative history permits retroactive application. As a result, ChemRex claims it has been deprived of a vested right since it relied on the pre-amendment statutory framework in meeting Federal and State financial responsibility requirements. In addition, ChemRex did not acquire liability insurance in reliance on Fund eligibility.

Respondents counter that the Board did not apply the law retroactively, but correctly applied the law in effect at the time ChemRex requested reimbursement. According to respondents, an eligibility determination is not made until an owner or operator of underground storage tanks actually requests payment for costs incurred. Although due deference will be given in appropriate circumstances, respondents' interpretation of statutory language is not binding on this court. (*Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security* (1989), 131 Ill. 2d 23, 34, 544 N.E.2d 772, 777; *Northern Trust Co. v. Bernardi* (1987), 115 Ill. 2d 354, 365, 504 N.E.2d 89, 93-94.) Further, "agency action that is inconsistent with the statute or regulations must be overturned." *Carson Pirie Scott*, 131 Ill. 2d at 34, 544 N.E.2d at 777.

■ The Illinois Supreme Court has defined a retrospective law as " 'one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, *or attaches a new disability in respect of transactions or considerations already past.*' " (Emphasis added.) (*United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 142, 204 N.E.2d 4, 6, quoting 82 C.J.S. *Statutes* § 412 (1953).) Respondents' construction of the September 1991 amendatory act clearly would "attach a new disability in respect of transactions or considerations already past" if their application of the Act to ChemRex's previously reported releases and unquestioned compliance with the statutes and rules were permitted to stand. When, as here, a law affects vested rights, our public policy against retroactive legislation must be invoked. This policy is founded upon constitutional provisions that guarantee due process of law, prohibit *ex post facto* laws and forbid impairment of the obligation of contracts. (*In re Application of County Treasurer of Cook County for Sale of Certain Real Estate for Delinquent Taxes* (1973), 14 Ill. App. 3d 1062, 1065, 304 N.E.2d 9.) A general rule of statutory construction

in Illinois requires that an amendatory act be construed as prospective only. (*Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 309, 522 N.E.2d 1195.) The presumption of prospectivity is rebuttable by express statutory language to the contrary, or by necessary implication (*Rivard*, 122 Ill. 2d at 309), which is absent here.

■ Of importance to our analysis is the fact that the statute fails to identify explicitly when an application for indemnity must be made by a participant in the Fund after a casualty has occurred. Given this ambiguity in the statutory language, the court may consider the purpose of the enactment. (*Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484, 588 N.E.2d 1111.) When the intent and purpose of the legislature can be determined, the court may supply words in order to obviate any repugnancy or inconsistency with that legislative intention. (*Community Consolidated School District No. 210 v. Mini* (1973), 55 Ill. 2d 382, 304 N.E.2d 75.) Section 2 of the Environmental Protection Act (415 ILCS 5/2(a)(iv), (a)(v) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111½, pars. 1002(a)(iv), (a)(v))) declares, in part:

"(iv) that it is the obligation of the State Government to manage its own activities so as to minimize environmental damage; to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act; to promote the development of technology for environmental protection and conservation of natural resources; and in appropriate cases *to afford financial assistance in preventing environmental damage*;

(v) that in order to alleviate the burden on enforcement agencies, to assure that all interests are given a full hearing, and *to increase public participation in the task of protecting the environment*, private as well as governmental remedies must be provided." (Emphasis added.)

■ In the case at bar, ChemRex complied with the statutory and rule directives by immediately notifying the State of the leaks and initiating corrective measures. ChemRex, having performed every task required by statute and rules to prevent environmental damage in anticipation of financial assistance, should have been granted reimbursement. To deny it such assistance would defeat the very spirit and purpose of this enactment. Therefore, in order to effectuate the purpose of the Environmental Protection Act as well as to avoid an unjust consequence, we find that a reasonable time frame for reimbursement will be read into the statute. Accordingly, we hold that eligibility for Fund reimbursement in this case should have

been determined at the time when underground storage tank owners and operators notified the State agencies of underground storage tank leaks and embarked upon the remediation required by statute and the rules.

We emphasize that here, ChemRex discovered, reported, and set about repairing the releases from the affected tanks immediately after the leaks occurred, in compliance with the statutes and rules. It filed progress reports, as well as a work plan and a health and safety plan with IEPA, in satisfaction of State requirements. Nothing in the record reveals any omission or want of diligence on the part of Chem-Rex in seeking indemnification. It had a reasonable expectation of reimbursement from the Fund. All these events occurred prior to the effective date of the statutory amendment. On September 6, 1991, the amendment became effective and changed the eligibility criteria for Fund reimbursement. One month later, ChemRex applied for payment from the Fund. Notwithstanding complete and extensive compliance with the statutory and rule requirements related to the spills, the Board denied ChemRex's reimbursement request for five of the tanks, reasoning that the amendment excluded them from Fund coverage.

The statutory framework at issue *sub judice* indicates that payment from the Fund is discretionary. Under section 22.13, which created the Fund:

"Monies in the Fund, pursuant to appropriation, *may* be used by the Agency for the following purposes:

\* \* \*

(5) for payment of costs of corrective action incurred by and indemnification to operators of underground storage tanks as provided in Section 22.18b of this Act." (Emphasis added.) (415 ILCS 5/22.13(a)(5) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111 1/2, par. 1022.13(a)(5)).)

Given the discretionary nature of the Fund, ChemRex should have been granted reimbursement upon its request for payment. Under the present facts, we conclude that respondents abused their discretion in applying the September 1991 amendment retroactively. ChemRex's assertion, that it had a right to reimbursement because it satisfied the eligibility criteria prior to its application and after the casualties occurred, must be sustained.

In light of the foregoing conclusion, we need not address the remaining points raised by ChemRex in seeking reversal of respondents' denial of its application for reimbursement from the Fund. We reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded with instructions.

SCARIANO and DiVITO, JJ., concur.