BOARD OF EDUCATION OF THE CITY OF CHICAGO, Plaintiff-Appellant, v. DENISE WEED *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 1—95—2876

Opinion filed June 18, 1996.

Robert S. Markin and Ted G. Goldsmith, both of Board of Education Law Department, of Chicago, for appellant.

James B. Dykehouse, of Witwer, Poltrock & Giampietro, of Chicago, for appellee Denise Weed.

JUSTICE DiVITO delivered the opinion of the court:

On April 29, 1993, the Board of Education of the City of Chicago (Board) requested the dismissal of tenured teacher Denise Weed for conduct unbecoming a teacher and insubordination. Weed was suspended without pay effective that date. Following an administrative hearing before the Illinois State Board of Education, Weed was reinstated with back pay. On administrative review, the circuit court affirmed the decision of the hearing officer and awarded back pay without making deductions requested by the Board. In this appeal, the Board contends that the circuit court erred in affirming the hearing officer's findings that Weed was not unfit to teach and that the discharge was invalid on the basis of insubordination, and in not decreasing the back pay award. In addition to upholding the factual findings of the hearing officer and the circuit court about Weed's fit-

ness and the damage award, we hold that a tenured teacher's refusal to request an unpaid medical leave of absence is not insubordination.

Weed was first employed by the Board as a teacher in April 1984. In September 1989, she was transferred to Montefiore School as a special education teacher. Her performance at Montefiore was rated as satisfactory by the school principal, Bernard Karlin, for the years 1989-90, 1990-91, and 1991-92. On June 3, 1992, Karlin submitted a written request to the Board that Weed be directed to undergo a complete medical examination. Pursuant to a directive from the general superintendent of schools, Weed was examined by Board staff psychiatrist Dr. Christel Lembke on June 15, 1992. Lembke determined that Weed was suffering from an underlying psychotic process of paranoia and was not able to function in a school setting as a teacher. The Board advised Weed to apply for a medical leave of absence. Weed requested a second examination. On July 8, 1992, Board staff psychiatrist Dr. John O'Donnell examined Weed and found her to have an underlying paranoid thought process and to be unfit to teach. Weed was again instructed to request a medical leave of absence. She sought a third examination, which was conducted by board-certified psychiatrist Dr. Jonathan Kelly. He diagnosed Weed as having a delusional disorder (persecutory type) and a paranoid personality disorder, according to the Diagnostic and Statistical Manual of Mental Disorders (3d rev. ed. 1987) (DSM-III-R) criteria, which impaired her capacity to function as a teacher.

Dr. Kelly's final report stated that he based his opinion upon a review of the psychological evaluations performed by Dr. Lembke, Dr. O'Donnell, and Dr. Eric Ostrov;[1] an examination he conducted; and interviews he held with several employees at Montefiore. Dr. Kelly related the substance of the interviews in his report. Karlin told him that Weed's performance had deteriorated, she was not accepting responsibility for her mistakes, she had difficulty dealing with authority figures, and she interpreted actions as threatening. Dr. Mary Ann Pollett, an administrator at Montefiore, told him that Weed was often late to class, disorganized, suspicious, distrustful, and angry. Leroy Holmes, a teacher at Montefiore, told him that Weed never had any psychological or mental problems, she had a personality clash with Karlin and Mr. Cashaw (the vice-principal), and Karlin and Cashaw were trying to get her fired. Irwin Fink, a child psychologist at Montefiore, told him that Weed did not exhibit

---

[1]Dr. Kelly referred Weed to Dr. Ostrov for an additional psychological evaluation. Although Dr. Ostrov found Weed to be extremely guarded and to have rigid defenses, he found no indication of an overt thought disorder.

any signs of depression, confusion, paranoid or suspicious thinking, or mental problems.

After Dr. Kelly made his report, Weed was advised to request an illness leave of absence. On February 25, 1993, having received no response, the Board adopted a warning resolution advising Weed that she was required to apply for an illness leave or face dismissal. Weed failed to comply with the warning resolution. On April 29, 1993, the Board adopted a request for her dismissal based on conduct unbecoming a teacher and insubordination, and suspended her without pay. On May 5, 1993, Weed requested a hearing.

On September 27, 1993, Weed sought an evaluation from psychiatrist Dr. David McNeil. After examining her and reviewing the four prior psychiatric evaluations, Dr. McNeil found that Weed did not meet the DSM-III-R diagnostic criteria for delusional disorder or paranoid personality disorder. His examination and review of the case materials did not reveal any delusions,[2] and he found evidence of only two of seven diagnostic criteria indicating a paranoid personality disorder, which requires the presence of four to warrant such a diagnosis.[3] Although Weed displayed some defensive characteristics, Dr. McNeil did not believe they would cause her to be ineffective as a teacher.

At the administrative hearing, Dr. Elaine Ferguson, the medical director of the Chicago public school system, testified that the Board does not have any written medical standards and that fitness for duty is determined on a case-by-case basis. Dr. Kelly testified about

---

[2]The essential feature of a delusional disorder is the presence of a persistent delusion. DSM-III-R § 297.10.

[3]DSM-III-R requires that at least four of the following criteria be met for a paranoid personality disorder:

"(1) expects, without sufficient basis, to be exploited or harmed by others[;]

(2) questions, without justification, the loyalty of friends and associates[;]

(3) reads hidden demeaning or threatening meanings into benign remarks or events, e.g., suspects neighbor put out trash early to annoy him[;]

(4) bears grudges or is unforgiving of insults or slights[;]

(5) is reluctant to confide in others because of unwarranted fear that the information will be used against him or her[;]

(6) is easily slighted and quick to react with anger or counterattack[; and]

(7) questions, without justification, fidelity of spouse or sexual partners[.]" DSM-III-R § 301.

his findings and criticized Dr. McNeil's report for containing insufficient corroboration through third-party interviews, inconsistencies, and an overwillingness to believe everything Weed told him. Dr. McNeil testified about his findings and criticized the reports of Dr. O'Donnell and Dr. Lembke for containing flawed methodologies and conclusions that were not based on supporting evidence. Neither Dr. O'Donnell nor Dr. Lembke testified. Their opinions were admitted into evidence for the limited purpose of showing the reasonableness of Karlin's belief that a medical examination of Weed was in order.

The administrative hearing officer found that the only salient factual dispute was whether Weed was suffering from a psychiatric disorder within the scope of DSM-III-R when she was declared mentally unfit. Concerning the delusional disorder diagnosis, the hearing officer stated that neither Dr. Kelly's report nor his testimony identified a specific delusion from which Weed suffered. Also, the hearing officer was unable to identify a delusion from a review of the record. Regarding the paranoid personality diagnosis, the hearing officer accepted Dr. McNeil's diagnosis over Dr. Kelly's. The hearing officer found that, other than a passage from an interview of Karlin, Dr. Kelly's report did not adequately specify facts that correlated to the diagnostic criteria for paranoid personality disorder. The relevant passage stated that Weed exhibited several paranoid characteristics. Yet, the hearing officer found that the passage virtually plagiarized DSM-III-R criteria numbers three through six, and he dismissed it as unreliable.

In sum, the hearing officer found that the Board failed to sustain its burden of proof that Weed was afflicted with a delusional disorder or a paranoid personality disorder at the time that she was declared medically unfit. After denying termination on grounds of insubordination, he ordered Weed to be reinstated with back pay.

The circuit court affirmed the decision of the hearing officer and heard the Board's motion for mitigation of damages. Weed testified, via affidavit, that during her two-year suspension without pay, she worked as a teaching aide or substitute teacher for three months, earning $1,545.64. She also applied for over 140 jobs, including positions as a special educator instructor, social work counselor, day care instructor, bank teller, mail clerk, secretary, bus driver, and casino worker. However, she did not find another job. The court found that Weed was reasonably diligent in seeking employment and that she did not improperly delay legal proceedings to increase her back pay award, and it awarded her $98,530.36 in back pay.

I

■ The Illinois School Code (School Code) provides that no teacher

shall be removed except for cause. 105 ILCS 5/34—85 (West 1992). "Cause" is not defined in the School Code, but section 10—22.4 states that "[t]emporary mental or physical incapacity to perform teaching duties, as found by a medical examination, is not a cause for dismissal." 105 ILCS 5/10—22.4 (West 1992).

The Board contends that the hearing officer's finding that Weed was not medically unfit was erroneous. Findings and conclusions of an administrative agency on questions of fact are deemed *prima facie* correct and will not be overturned unless they are against the manifest weight of the evidence. *Board of Education, School District No. 151 v. Illinois State Board of Education*, 154 Ill. App. 3d 375, 382, 507 N.E.2d 134 (1987).

## A

■ When discussing whether Weed met the criteria for a diagnosis of paranoid personality disorder, the hearing officer noted that he was required to give Dr. Kelly's opinion limited weight because it was based upon hearsay. The Board contends that it was improper for the hearing officer to give limited weight to Dr. Kelly's testimony and report. The Board argues that the medical reports and interviews that Dr. Kelly relied upon in making his report were admissible because they are the type of materials reasonably relied upon by experts in the psychiatric field. *People v. Anderson*, 113 Ill. 2d 1, 7, 495 N.E.2d 485 (1986), *cert. denied*, 479 U.S. 1012, 93 L. Ed. 2d 713, 107 S. Ct. 658 (1986).

Reports from other psychiatrists, employers, and fellow employees are the type of materials reasonably relied upon by psychiatric experts in making diagnoses. Thus, the reports and interviews detailed in Dr. Kelly's report were admissible for the purpose of showing the basis for his opinions. However, the issue of admissibility for that limited purpose is distinct from the question of the weight and credibility of the evidence.

The determination of the weight and credibility to be granted to expert testimony is within the province of the administrative agency. *Tate v. Pollution Control Board*, 188 Ill. App. 3d 994, 1026, 544 N.E.2d 1176 (1989), *appeal denied*, 129 Ill. 2d 572, 550 N.E.2d 565 (1990). Here, the hearing officer was incorrect in stating that he was required to give limited weight to Dr. Kelly's opinion due to its reliance upon hearsay. Yet, he was entitled to weigh the credibility of Dr. Kelly's testimony and report as well as the data upon which Dr. Kelly relied. It is clear from his other comments that he understood the relevant law and appropriately weighed Dr. Kelly's opinion.

## B

■ The Board contends that the hearing officer's finding that

Weed did not have a delusional or paranoid personality disorder was against the manifest weight of the evidence. The hearing officer accepted Dr. McNeil's testimony that Weed did not suffer from any delusions and that only two of the requisite four symptoms of a paranoid personality disorder were present. The hearing officer also noted that Dr. Kelly did not identify a specific delusion and that his listing of paranoid diagnostic criteria through his interview with Karlin lacked credibility because it virtually plagiarized the language from DSM-III-R. This evidence was sufficient to support the hearing officer's finding.

## C

■ The Board also argues that even if a DSM-III-R disorder was not present, the hearing officer should have found that Weed was unfit to teach.[4] The Board raised this argument at the administrative hearing, but the hearing officer stated that Dr. Kelly's report spoke only of DSM-III-R disorders and did not address general unfitness. Also, the hearing officer stated that the only possible sources of factual support for a finding of unfitness, *i.e.*, portions of Dr. Kelly's report, were inadmissible hearsay and entitled to limited weight. As discussed above, the reports that Dr. Kelly relied upon were admissible only for the purpose of showing the basis for his opinion. The hearing officer was correct in saying that the statements of others, relied upon by Dr. Kelly in his report, were hearsay as they related to the question of Weed's fitness apart from Dr. Kelly's opinion. The hearing officer's finding that the Board failed to prove that Weed was unfit to teach was not against the manifest weight of the evidence.

## II

The Board contends that the circuit court erred in not reducing the award of back pay damages.

## A

■ The Board argues that Weed was not reasonably diligent in mitigating her damages. An award to a wrongfully discharged teacher is offset by sums that the teacher earned or could have earned with reasonable diligence during the period of discharge. The employer has the burden of showing that the teacher could have made additional earnings. *Bessler v. Board of Education of Chartered School District No. 150*, 69 Ill. 2d 191, 198-99, 370 N.E.2d 1050 (1977).

---

[4]The Board is correct in contending that a DSM-III-R diagnosis is not required to dismiss a teacher for cause.

Weed testified that during her two-year discharge she worked as a substitute teacher for three months, earning $1,545.64, and applied for over 140 positions. The circuit court accepted Weed's testimony and did not reduce her award for failure to act with reasonable diligence. The Board argues that Weed should have been able to obtain a job and that her failure to do so indicates a lack of reasonable diligence. However, because the Board does not offer any evidence indicating that Weed could have obtained additional earnings, we affirm the finding of the circuit court.

## B

■ The Board also argues that Weed was responsible for lengthening the suspension, and thereby increasing the back pay award, through litigation tactics. The Board maintains that the circuit court erred in not reducing the award by an amount attributable to the lengthening.

First, the Board argues that Weed caused a delay of five months by resisting its requests for the release of certain medical records. That resistance required the Board to argue its discovery request before both the hearing officer and the circuit court before obtaining the records. Second, Weed filed in the circuit court a motion to dismiss for lack of jurisdiction that delayed the action an additional two months.

The circuit court found that Weed acted reasonably in pursuing these arguments and that, given the regular delays in the circuit court, there was no reason to reduce the back pay award. The circuit court acted within its discretion, and its judgment is affirmed.

## III

■ Next, the Board contends that the hearing officer erred in not upholding Weed's discharge on the basis of insubordination. Insubordination is grounds for dismissal of a teacher. *Board of Education v. Harris*, 218 Ill. App. 3d 1017, 578 N.E.2d 1244 (1991) (failure to accept a classroom assignment), *appeal denied*, 142 Ill. 2d 651, 584 N.E.2d 126 (1991); *Hazel Crest Federation of Teachers, Local 2077 v. Board of Education of School District 152¹/₂*, 206 Ill. App. 3d 69, 563 N.E.2d 1088 (1990) (refusal to go on a field trip). The Board argues that Weed's refusal to request an unpaid medical leave of absence amounted to insubordination.

A tenured teacher has a property interest in her continued employment that is protected by the due process clause of the fourteenth amendment. *Dusanek v. Hannon*, 677 F.2d 538, 542 (7th Cir. 1982), *cert. denied*, 459 U.S. 1017, 74 L. Ed. 2d 512, 103 S. Ct. 379 (1982). The *Dusanek* court explained that a tenured teacher in Illinois may oppose dismissal rather than request a leave of absence:

"[A] health examination must be conducted before a teacher is asked to request a leave of absence. When the result of the health examination is adverse to a teacher, the Illinois procedure permits the teacher either to request a medical leave of absence, or to fight his or her removal by refusing to take such a leave, thereby triggering the rights to a hearing.

\* \* \*

\*\*\* [A teacher] has the option of defending oneself in a proper dismissal hearing or voluntarily accepting a change in one's job status." *Dusanek*, 677 F.2d at 542-43.

In response to a posed hypothetical, the *Dusanek* court also stated that the continued performance of duties in the face of a demand for a request of medical leave would not be insubordination. *Dusanek*, 677 F.2d at 543.

We adopt the rationale of the *Dusanek* court. Here, Weed's decision to ignore the Board's order and wait for a dismissal hearing at which to defend herself was a proper exercise of her procedural rights and did not amount to insubordination.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.