STEVEN PANZELLA, Plaintiff-Appellant, v. RIVER TRAILS SCHOOL DISTRICT 26, Cook County, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—99—1923

Opinion filed May 18, 2000.

528

Michael T. Lamb, of Illinois Education Association, NEA, of Chicago, for appellant.

Hinshaw & Culbertson, of Chicago (Scott E. Nemanich and Allyn J. Franke, of counsel), for appellee River Trails School District 26.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Marcia L. McCormick, Assistant Attorney General, of counsel), for appellee Illinois State Board of Education.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Steven Panzella, was a tenured school teacher in River Trails School District 26 (District) until he was discharged based on a juvenile court's finding that he sexually abused his child. Pan-

zella contested his termination before an Illinois State Board of Education (State Board) hearing officer, who upheld the dismissal. Panzella then sought administrative review before the circuit court, which confirmed the hearing officer's ruling. Panzella filed this timely appeal. For the reasons that follow, we affirm.

The District hired Panzella as a special education teacher for the 1968-69 school year. After Panzella successfully completed a two-year probationary period, the District's board of education (District Board) voted in 1970 to extend his contract for the next school year, thereby placing him on contractual continued service, also called tenure. His contract continued each year thereafter until the dismissal which led to these proceedings.

On August 23, 1996, the Cook County State's Attorney's office notified the principal of the school to which Panzella was assigned that he had been charged with abuse of his daughter in a case pending in the juvenile court. When confronted by the District's superintendent, Panzella responded that his divorce spawned the allegations, which he continues to deny. The District placed Panzella on leave pending the adjudication of the charges. On October 7, 1997, the juvenile court found, pursuant to section 2—3(2)(iii) of the Juvenile Court Act of 1987 (705 ILCS 405/2—3(2)(iii) (West 1996)), that Panzella sexually abused his minor child. Panzella's appeal of the juvenile court's order is still pending as of the date of this opinion. The District received a copy of the juvenile court's adjudication order but postponed taking action. On January 2, 1998, while Panzella was still on leave, Public Act 90—566 (Pub. Act 90—566, eff. January 2, 1998) became effective. Among other things, Public Act 90—566 amended section 10—21.9(c) of the Illinois School Code (the School Code) (105 ILCS 5/1—1 *et seq.* (West 1998)), by adding language prohibiting a school board from knowingly employing a person who has been found by a juvenile court to be the perpetrator of sexual or physical abuse of a minor. Pub. Act 90—566, eff. January 2, 1998 (amending 105 ILCS 5/10—21.9(c) (West 1998)).

In a letter dated January 7, 1998, the District superintendent informed Panzella of her intention to recommend his termination to the District Board predicated on the juvenile court's adjudication order and the newly amended section 10—21.9(c) (105 ILCS 5/10—21.9(c) (West 1998)). She indicated that she would communicate the recommendation in a closed session of the District Board, but she informed Panzella that he could be present either personally or through counsel. Panzella chose not to appear before the District Board, instead responding by letter in which he raised certain constitutional arguments and reserved the right to challenge the

superintendent's evidentiary basis for her recommendation. The District Board voted to dismiss Panzella and served him with a copy of the resolution and bill of particulars pursuant to the School Code (see 105 ILCS 5/10—22.4, 24—12 (West 1998)), which prompted Panzella to file a request for an administrative hearing (see 105 ILCS 5/24—12 (West 1998)).

The parties waived a formal hearing, opting instead only to brief and argue the matter before the hearing officer, Dr. Vivian Gordon. The parties stipulated to a statement of facts and exhibits and presented two issues for consideration: (1) whether the legislature intended the amendment to section 10—21.9(c) to apply to teachers who entered into contractual continued service prior to its effective date and who were the subject of a juvenile court adjudication order prior to January 2, 1998; and (2) whether the amendment required dismissal of a teacher in contractual continued service based on a juvenile court adjudication order for which appeals were not yet exhausted. Apparently misconstruing the plaintiff's argument regarding retroactive application, the hearing officer held that the District Board properly applied the amendment prospectively, rather than retroactively, because it waited until after the effective date of the amendment to terminate the plaintiff. She also found that, although the amendment to section 10—21.9(c) may be an impairment to contracts, it was justified as reasonable and necessary to serve an important public purpose. The hearing officer further found that the District Board could dismiss a teacher under section 10—21.9(c) despite the fact that all appeals of the juvenile court order had not been exhausted. Moreover, she indicated that section 10—21.9(c) mandated the District Board to dismiss Panzella once it had knowledge of the juvenile court's adjudication order. She therefore concluded that the District Board was correct to dismiss Panzella and affirmed its decision.

Panzella filed a complaint for administrative review, and the circuit court confirmed the hearing officer's decision. It is from the circuit court's order that Panzella appeals, raising three issues for our review: (1) whether the 1998 amendment to section 10—21.9(c) of the School Code requires dismissal of a teacher in contractual continued service based on a juvenile court adjudication order for which appeals are not yet exhausted; (2) whether the amendment takes away or impairs Panzella's vested rights; and (3) whether the amendment impairs his rights under his employment contract in violation of the United States and Illinois Constitutions. We note that the facts in this case are not in dispute, the parties having raised purely legal questions of statutory construction and constitutional law. The interpretation given to a

statute by the agency charged with administering it is considered relevant, but not binding. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995). Accordingly, we review the administrative agency's legal conclusions *de novo. Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 1007, 714 N.E.2d 11 (1999).

■ We first address Panzella's contention that the amendment at issue does not require dismissal prior to the exhaustion of the appeals of the juvenile court's adjudication order. Section 10—21.9(c) provides, in relevant part:

"[N]o school board shall knowingly employ a person who has been found to be the perpetrator of sexual or physical abuse of any minor under 18 years of age pursuant to proceedings under Article II of the Juvenile Court Act of 1987 [(705 ILCS 405/2—1 *et seq.* (West 1998))]." 105 ILCS 5/10—21.9(c) (West 1998).

Panzella focuses on the use of the word "proceedings," arguing that the term includes the appellate process; whereas, the State Board focuses on the use of the word "found," arguing that a school board must act on a finding of abuse once it is made. For the reasons that follow, we agree with the State Board.

■ The first rule of statutory construction is that a court should ascertain and give effect to the intention of the legislature. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91, 606 N.E.2d 1111 (1992). Legislative intent should be ascertained from the language used in the statute. *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 84, 256 N.E.2d 758 (1970). If the language is clear, the court should not resort to extrinsic aids of construction. *Calamari v. Drammis*, 286 Ill. App. 3d 420, 425, 676 N.E.2d 281 (1997). In this case, the language of the statute is clear on its face. Section 10—21.9(c) contains two elements: (1) a finding of abuse by the juvenile court; and (2) knowledge of that finding on the part of a school board. If both elements are met, then the statute prohibits a school board from employing the person.

The court must also look at the statute as a whole when determining legislative intent. *Kaszubowski v. Board of Education of the City of Chicago*, 248 Ill. App. 3d 451, 457-58, 618 N.E.2d 609 (1993). We take note of the fact that, in addition to section 10—21.9(c), Public Act 90—566 also amended section 10—21.9(e) of the School Code, which now provides that, "[u]pon receipt of the record of a conviction of or a finding of child abuse by a holder of any [teaching] certificate," the superintendent must initiate certificate suspension and revocation proceedings. 105 ILCS 5/10—21.9(e) (West 1998). The word "proceedings" is noticeably absent from section 10—21.9(e). Panzella argues that use of the term "proceedings" in section 10—21.9(c) requires

that the appeals process be complete prior to a school board taking action under that section. The fact that the legislature intended a mere finding to be sufficient to justify the commencement of certificate suspension and revocation proceedings under section 10—21.9(e) suggests that it also intended a mere finding to be sufficient to justify termination under section 10—21.9(c).

The legislature's intent is further evidenced by that portion of Public Act 90—566 which amended the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2—1 *et seq.* (West 1998)). Section 2—21 of the Act governs "findings and adjudication" with respect to abused, neglected, and dependent minors. Public Act 90—566 amended section 2—21(1) to provide that once the juvenile court determines that a person has inflicted physical or sexual abuse on a minor, it must forward the determination to the Department of the State Police, which then includes the information in any criminal background investigation report requested by a school district. 705 ILCS 405/2—21(1) (West 1998). This amendment to the Act further demonstrates that the legislature intended that a finding of abuse serve as the predicate for either disciplinary measures or hiring practices without regard to the appellate process.

We next address Panzella's argument that the amendment to section 10—21.9(c) cannot be applied to him because he was on contractual continued service at the time it became effective. He claims that, prior to the enactment of the amendment, he had a vested right to the "rights flowing from" his employment contract and that the amendment impermissibly impaired those rights. In order to explain Panzella's argument more fully, we must summarize the statutory dismissal procedures applicable to tenured teachers. Under the School Code, a teacher who completes a probationary period enters upon contractual continued service, which has the effect of continuing the terms and provisions of the contract pursuant to which the teacher was working during the last school term of his probationary period. Those contractual terms and conditions, however, continuously remain subject to the School Code and the employing board's regulations. 105 ILCS 5/24—11 (West 1998). The School Code further provides that a tenured teacher may only be discharged for cause. 105 ILCS 5/10—22.4 (West 1998); see also *Board of Education of Sparta Community Unit School District No. 140 v. Illinois State Board of Education*, 217 Ill. App. 3d 720, 722, 577 N.E.2d 900 (1991). The legislature failed to define cause, stating only that a teacher may by fired for "incompetency, cruelty, negligence, immorality or other sufficient cause." 105 ILCS 5/10—22.4 (West 1998). If a school board seeks to dismiss a teacher, it must approve, by motion, a list of specific charges and serve

the teacher with written notice of those charges, including a bill of particulars, within five days of its adoption of the motion. 105 ILCS 5/24—12 (West 1998). The School Code does not require a hearing, unless the teacher requests one in writing within 10 days of receipt of the notice. 105 ILCS 5/24—12 (West 1998). The teacher has the right to be present at the hearing, to be represented by counsel, to cross-examine witnesses, and to present his own evidence and witnesses in defense of the charges. 105 ILCS 5/24—12 (West 1998). Before a school board sets a hearing on charges related to causes that are considered remediable, it must give the teacher reasonable warning in writing "stating specifically the causes which, if not removed, may result in charges." 105 ILCS 5/24—12 (West 1998). A school board lacks jurisdiction to dismiss a teacher for remediable conduct unless the warning is given. *Board of Education of Argo-Summit School District No. 104 v. State Board of Education*, 138 Ill. App. 3d 947, 950, 487 N.E.2d 24 (1985). Thus, if a school board does not issue a written warning, it must prove that the teacher's conduct was irremediable in order to dismiss him. *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622*, 67 Ill. 2d 143, 153, 365 N.E.2d 322 (1977).

In the instant case, there is no question that the District Board approved, by motion, a charge against Panzella, namely, a charge that the juvenile court found that he sexually abused a minor, and served him with written notice of the charge and a bill of particulars within five days of its adoption of the motion. Furthermore, there is no question that the District Board accorded Panzella a hearing when he requested one. These requirements were in effect both prior to and subsequent to the effective date of the amendment to section 10—21.9(c) of the School Code, and Panzella does not contend that they were not met.

Panzella does contend, however, that as a result of the amendment to section 10—21.9(c), the nature of the hearing he was granted changed. First, he notes that, prior to the effective date of the amendment, if the District Board had wished to discharge him for sexually abusing his daughter, it would have had to file a charge pursuant to section 10—22.4 (governing dismissal for cause). At the hearing, the District Board would have been required to prove that his conduct was irremediable, since it never issued a written warning that his conduct was unacceptable or provided him with the opportunity to remediate. Additionally, at the hearing, the District Board would have been required to prove that he actually abused his daughter, and he would have been allowed to present evidence to the contrary. If dismissed, he would also have had the opportunity to seek administrative review of

the hearing officer's factual determination that he abused his daughter. After the amendment, Panzella notes, the District Board was able to dismiss him solely on the basis of the juvenile court finding, without ever presenting evidence as to whether he actually abused his daughter and without proving that his conduct was irremediable. Accordingly, he argues, the amendment interfered with the "rights flowing from" his employment contract and was, therefore, retroactive as applied to him.

A retroactive law is " 'one that takes away or impairs vested rights acquired under existing laws.' " *Chemrex, Inc. v. Pollution Control Board*, 257 Ill. App. 3d 274, 278, 628 N.E.2d 963 (1993), quoting *United States Steel Credit Union v. Knight*, 32 Ill. 2d 138, 142, 204 N.E.2d 4, 6 (1965). Vested rights are interests that are protected from legislative interference by the due process clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; see also *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 289, 664 N.E.2d 36 (1996). Our supreme court has defined a vested right as "an expectation that is so far perfected that it cannot be taken away by legislation" and as "a complete and unconditional demand or exemption that may be equated with a property interest." *Armstead*, 171 Ill. 2d at 290-91; see also *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291, 295-96, 710 N.E.2d 827 (1999). In *Dodge v. Board of Education of City of Chicago*, 364 Ill. 547, 552, 5 N.E.2d 84 (1936), the court explained that a vested right is:

> "something more than a mere expectancy based upon an anticipated continuance of an existing law. If before rights become vested in particular individuals the convenience of the State induces amendment or repeal, such individuals have no cause to complain."

Thus, there is no vested right in the mere continuance of a law. *Armstead*, 171 Ill. 2d at 291; *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 215, 632 N.E.2d 1035 (1994). Rather, the legislature has an ongoing right to amend a statute. *Armstead*, 171 Ill. 2d at 291; *Envirite*, 158 Ill. 2d at 215.

We find that Panzella confuses the right to due process with the grounds upon which dismissal may be based. As a tenured teacher, he had a property interest in his continued employment which was protected by the due process clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; *Board of Education v. State Board of Education*, 292 Ill. App. 3d 101, 113, 685 N.E.2d 412 (1997); *Board of Education of the City of Chicago v. Weed*, 281 Ill. App. 3d 1010, 1018, 667 N.E.2d 627 (1996). However, he had a vested right in neither the District Board having to prove the underlying conduct nor in the District Board having to prove irremedi-

able cause. The amendment to section 10—21.9(c) now provides a school board with a *per se* ground for dismissal for cause based on a juvenile court's finding that a person sexually or physically abused a minor. In other words, the legislature added to the grounds for dismissal, which was within its right to do. *Armstead*, 171 Ill. 2d at 291; *Envirite*, 158 Ill. 2d at 215. We take note of the fact that section 24—11 of the School Code does not provide that a tenured teacher's contract remains subject to the School Code *as it existed at the time* the teacher entered into contractual continued service but, rather, merely provides that the contract remains subject to the School Code. 105 ILCS 5/24—11 (West 1998). We further note that education is a highly regulated area of employment. When Panzella entered such a regimented profession, he should have expected that it would be subject to further regulation in the future. See *Veix v. Sixth Ward Building & Loan Ass'n*, 310 U.S. 32, 38, 84 L. Ed. 1061, 1065, 60 S. Ct. 792, 795 (1940). Finally, we find that Panzella's vested right in his tenure was fully protected by a pretermination opportunity to be heard in person by the District Board, which he declined, and a post-termination hearing. We therefore conclude that the amendment to section 10—21.9(c) did not impair Panzella's vested rights.

We now address Panzella's final contention, namely, that the amendment to section 10—21.9(c) of the School Code violates the United States and Illinois Constitutions because it impairs his rights under his employment contract. The United States and Illinois Constitutions prohibit states from enacting laws that impair the obligation of contracts. U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16. A law that substantially impairs a contractual right is unconstitutional, unless justified as a reasonable exercise of the police power to secure an important public interest. *Stelzer v. Matthews Roofing Co.*, 117 Ill. 2d 186, 190, 511 N.E.2d 421 (1987). In this case, the hearing officer found that the amendment was justified because it served the important public interest of protecting our school children. We find that there was no need to reach the issue of whether the amendment was justified and reasonable, because it did not substantially impair any of Panzella's contractual rights.

In contract impairment cases, the primary inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 57 L. Ed. 2d 727, 736, 98 S. Ct. 2716, 2722 (1978). We find, in this case, that the amendment did not change or impair Panzella's contractual relationship with the District. As stated previously, when a teacher is on contractual continued service, the terms and conditions of his employment contract are subject to the provisions of

536

the School Code and the regulations of the District Board (105 ILCS 5/24—11 (West 1998)). Further, under the School Code, Panzella was always subject to dismissal for cause. The amendment to section 10—21.9(c) merely provided a school board with a *per se* ground for dismissal for cause based on a juvenile court's finding of abuse. Panzella did not have a vested right in the continuance of the School Code as it existed at the time of his tenure. *Armstead*, 171 Ill. 2d at 291; *Envirite*, 158 Ill. 2d at 215. Rather, the School Code remained subject to amendment by the legislature. *Armstead*, 171 Ill. 2d at 291; *Envirite*, 158 Ill. 2d at 215. Therefore, the amendment to section 10—21.9(c) of the School Code did not unconstitutionally impair Panzella's contractual relationship with the District.

For the foregoing reasons, we affirm the trial court's order confirming the decision of the hearing officer.

Affirmed.

HALL and BARTH, JJ., concur.