Docket No. 82459–Agenda 22–September 1997.

THE PEOPLE 
ex rel. 
ROBERT SKLODOWSKI 
et al.
, Appellees, v. THE STATE OF ILLINOIS 
et al.
, Appellants.

Opinion filed March 19, 1998.

JUSTICE NICKELS delivered the opinion of the court:

Beneficiaries in various state employee pension systems brought suit seeking to compel the state and its officials to appropriate monies necessary to meet statutory funding obligations contained in the Illinois Pension Code (40 ILCS 5/1–101 
et seq.
 (West 1994)). The Cook County circuit court dismissed the action on the pleadings, finding that the requested relief is barred by the separation of powers clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, §1). The appellate court reversed. 284 Ill. App. 3d 809. We granted defendants' petition for leave to appeal. 166 Ill. 2d R. 315.

BACKGROUND

This action began when six members of various state retirement systems filed a complaint seeking 
mandamus
, declaratory and injunctive relief in the circuit court of Cook County. Plaintiffs included Robert Sklodowski, Thomas Hanahan, Sandee Hanahan, Susan Lillis, Robert Negronida, and Mark Warden. Plaintiffs subsequently filed a second-amended complaint, purporting to be both a class action and a derivative action, naming as defendants the State of Illinois and its officials: Governor Jim Edgar; the President of the Senate, Philip Rock; the Speaker of the House of Representatives, Michael Madigan; the Comptroller, Dawn Clark Netsch; and the Treasurer, Patrick Quinn. Also named as nominal defendants were the Judges' Retirement System of Illinois (JRS), the State Employees' Retirement System of Illinois (SERS), the State Universities Retirement System (SURS), the Teachers' Retirement System of the State of Illinois (TRS), the General Assembly Retirement System (GARS), and their trustees.

In substance, plaintiffs' complaint alleged that the state failed to comply with the funding provisions contained in Public Act 86–273, eff. August 23, 1989. These provisions controlled funding of the five state retirement systems governed by the Pension Code. See Ill. Rev. Stat. 1989, ch. 108½, pars. 2–124, 14–131, 15–155, 16–158, 18–131. The funding provisions contained in Public Act 86–273 required that, starting in 1990, the state would contribute additional incremental amounts each year, that along with employer contributions, would in seven years meet the annual normal cost for each fund, as well as satisfy the amount necessary to amortize the unfunded liability for each fund over the next 40 years.

Plaintiffs' complaint first alleged that the State of Illinois and the trustees of the pension funds, by failing to insure funding occurred in accordance with Public Act 86–273, violated fiduciary duties owed to participants. Plaintiffs' complaint also alleged that the state and its officials, in failing to appropriate monies sufficient to satisfy Public Act 86–273, violated the pension protection clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, §5) and impaired the contract rights of fund participants in violation of the contract clauses of the United States Constitution (U.S. Const., art. I, §10) and the Illinois Constitution (Ill. Const. 1970, art. I, §16). Plaintiffs' complaint also alleged that defendants, in budgeting and appropriating less than is required under the Pension Code, deprived them of property under color of law in violation of 42 U.S.C. §1983 (1982).

Three of the nominal defendants, TRS, SERS, SURS, filed counterclaims against the State of Illinois and its officials. These counterclaims were similar to plaintiffs' claims. The trial court granted permission to intervene in the proceedings to the Illinois Retired Teachers Association (IRTA), a not-for-profit corporation whose purpose is to protect the interests of retired teachers. IRTA's complaint also contained claims similar to those of plaintiffs and counterplaintiffs.

The trial court granted defendants' motions to dismiss each of these claims. The trial court determined that all the claims were insufficient as a matter of law because the requested relief, a judicial order requiring the state through its legislative and executive officials to appropriate monies, would violate the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1). The trial court therefore dismissed plaintiffs' second-amended complaint, intervenor IRTA's complaint, and the counterclaims of SURS, SERS, TRS. Each appealed.

During the pendency of the appeal, the General Assembly passed Public Act 88–593, which repealed Public Act 86–273 and amended the funding provisions for each of the retirement systems at issue. See Public Act 88–593, eff. August 22, 1994. This amendment required a lower level of state contributions than previously required by Public Act 86–273, by reducing the ultimate funding target from 100% to 90%, and by extending the time to reach that target from 40 to 50 years. See 40 ILCS 5/2–124, 14–131, 15–155, 16–158, 18–131 (West 1994). The amendment further provided for continuing automatic appropriations for each pension system. See Pub. Act 88–593, eff. August 22, 1994 (adding 40 ILCS 15/1.1, 1.2 (West 1994)).

Based on this amendment, defendants moved in the appellate court to dismiss the appeal as moot. This motion was taken with the case and summarily denied by the appellate court without explanation.

In its opinion, the appellate court first determined that the state itself should be dismissed from the lawsuit because the State Lawsuit Immunity Act (745 ILCS 5/1 (West 1994)) grants the state immunity. However, the appellate court concluded that the remaining state defendants could be made parties in their official capacities. The appellate court reasoned that these claims were not against the state, but were instead seeking only to require that state officials meet statutory obligations set upon their offices.

The appellate court then examined whether the trial court erred in dismissing all the claims on the basis that the requested relief, a judicial order directing an appropriation of state monies to fund the retirement systems, would violate separation of powers principles. The appellate court concluded that issuing an order of 
mandamus 
compelling state officials to comply with the funding requirements contained in the Pension Code would not violate the separation of powers provision. The appellate court reasoned that the funding required by Public Act 86–273 represents a mandatory duty for state officials. Furthermore, a court could, consistent with separation of powers principles, order the disbursement of the state funds necessary to meet this duty without requiring a specific legislative appropriation that meets constitutional standards (see Ill. Const. 1970, art. VIII, §2(b)).

After determining that the doctrine of separation of powers does not bar the requested relief, the appellate court then examined plaintiffs' claims that they had a contractual right protected by the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, §5) to have the state contribute the funds necessary to meet the level of pension funding required by Public Act 86–273. The appellate court concluded that the pension protection clause created a contractual relationship under the Pension Code between the pension beneficiaries and the state. Thus, the appellate court reasoned that the beneficiaries were entitled to enforce the statutory funding levels contained in Public Act 86–273 as a contractual right.

After the appellate court issued its opinion, this court decided 
McNamee v. State of Illinois
, 173 Ill. 2d 433 (1996). In 
McNamee
, participants in police pension funds brought an action arguing that an amendment to the Pension Code changing the method of computing the annual amount necessary to amortize the unfunded accrued liability of police pension funds violated the participant's constitutional pension rights by making the funds less secure. The 
McNamee
 court reviewed the debates from the constitutional convention and determined that the pension protection clause created a contractual right only to receive benefits, but did not control funding.

The appellate court subsequently issued a modified opinion which sought to distinguish 
McNamee
. The appellate court apparently reasoned that, even if the framers did not intend to control funding with the passage of the pension protection clause, the legislature's unilateral action of passing a funding statute created an enforceable contractual right protected by that clause.

The appellate court also reasoned that the present case is distinguishable from 
McNamee
 because the present claims included allegations that the pension systems are in a precarious financial position and could be depleted by the years 2008 or 2009. The appellate court determined that these allegations are sufficient to state a claim under the pension protection clause because they involve the actual “impairment” of benefits, not merely funding.

The appellate court further determined in its modified opinion that plaintiffs were also entitled to protection of these contract rights under the contract clauses of the United States Constitution (U.S. Const., art. I, §10) and the Illinois Constitution (Ill. Const. 1970, art. I, §16). The appellate court found it unnecessary to address plaintiffs' fiduciary duty and section 1983 claims.

The appellate court denied defendants' motion for a certificate of importance. See 155 Ill. 2d R. 316. We granted the defendants' petition for leave to appeal. 166 Ill. 2d R. 315. We conclude that plaintiffs, counterplaintiffs, and intervenor do not possess either a constitutional or vested contractual right to enforce the funding obligations contained in Public Act 86–273. Therefore, we reverse the appellate court and affirm the circuit court.

ANALYSIS

In determining the legal sufficiency of a complaint, all well-pleaded facts are taken as true and all reasonable inferences from those facts are drawn in favor of plaintiff. 
Connick v. Suzuki Motor Co
., 174 Ill. 2d 482, 490 (1996). A reviewing court must determine whether the allegations in a com­plaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. 
Connick
, 174 Ill. 2d at 490. The sufficiency of a complaint is an issue of law that we review 
de novo
. 
Toombs v. City of Champaign
, 245 Ill. App. 3d 580, 583 (1993).

The pension protection clause in the Illinois Constitution provides:

“Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired.” Ill. Const. 1970, art. XIII, §5.

The primary purpose behind the inclusion of section 5 of article XIII was to eliminate the uncertainty that surrounded public pension benefits at the time of the 1970 Constitution. 
McNamee
, 173 Ill. 2d at 440. Historically, Illinois adhered to the traditional classification of pension plans as either mandatory or optional. Where an employee's participation in a pension plan was mandatory, the rights created in the relationship were considered in the nature of a gratuity that could be revoked at will. See, 
e.g.
, 
Bergin v. Board of Trustees
 of the Teachers' Retirement System
, 31 Ill. 2d 566, 574 (1964); 
Jordan v. Metropolitan Sanitary District
 of Greater Chicago
, 15 Ill. 2d 369, 382 (1958); 
Blough v. Ekstrom
, 14 Ill. App. 2d 153, 160 (1957). Where, however, the employee's participation in a pension plan was optional, the pension was considered enforceable under contract principles. 
Bardens v. Board of Trustees
 of the Judges Retirement System
, 22 Ill. 2d 56, 60 (1961); 
People ex rel. Judges Retirement System v. Wright
, 379 Ill. 328, 333 (1942).

The pension protection clause contained in the 1970 Constitution served to eliminate any uncertainty as to whether state and local governments were obligated to pay pension benefits to their employees. The plain language of the pension protection clause makes participation in a public pension plan an enforceable contractual relationship and also demands that the “benefits” of that relationship “shall not be diminished or impaired.” Ill. Const. 1970, art. XIII, §5. This court has held that the contractual relationship is governed by the actual terms of the Pension Code at the time the employee becomes a member of the pension system. 
Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One
, 122 Ill. 2d 22, 26 (1988); 
Kerner v. State Employees' Retirement System
, 72 Ill. 2d 507, 514 (1978).

Defendants argue that the appellate court erred in construing the pension protection clause as a means to create a contractual right to force the appropriation of monies to fulfil the statutory funding obligations in the Pension Code. Relying on 
People ex rel. Illinois Federation of Teachers v. Lindberg
, 60 Ill. 2d 266 (1975), and 
McNamee
 v. State of Illinois
, 173 Ill. 2d 433 (1996), defendants argue that the pension protection clause creates enforceable contractual rights only to receive benefits, not control funding.

Plaintiffs contend that when the General Assembly amended the Pension Code to establish a level of funding that would achieve full funding, those requirements became an enforceable contractual relationship between the beneficiaries and the state. This contractual relationship is then protected by the pension protection clause, as well as the contract clauses of the United States and Illinois Constitutions. In response to the defendants' case law, plaintiffs argue that 
Lindberg
 leaves open the question of whether the legislature may create vested contractual rights in the Pension Code. Furthermore, plaintiffs argue that the 
McNamee
 case is distinguishable because here plaintiffs have alleged more than a funding claim, they have alleged that the state's underfunding of these retirement systems has impaired pension 
benefits
 by placing the funds in a precarious financial condition.

In light of these arguments, we begin our analysis into the protection afforded by the pension protection clause with a thorough examination of the 
Lindberg
 and 
McNamee
 decisions. In 
Lindberg
, participants in several teachers' pension funds challenged then Governor Walker's item reduction of fiscal appropriations made to their respective funds. The pension fund participants argued that the Pension Code establishes and defines a contractual relationship between themselves and the state which obligates the state to fulfill its statutory funding commitments. 
Lindberg
, 60 Ill. 2d at 271-72. In rejecting that contention, the court stated that “the convention debates do not establish the intent to constitutionally require a specific level of pension appropriations during a fiscal period.” 
Lindberg
, 60 Ill. 2d at 272. This court concluded in 
Lindberg
 that the pension protection clause does not create a contractual basis for participants to expect a particular level of funding, but only a contractual right “that they would receive the money due them at the time of their retirement.” 
Lindberg
, 60 Ill. 2d at 271.

The 
Lindberg
 court, after concluding that the pension protection clause does not control funding, also rejected the argument that the General Assembly intended to create any “vested” contractual relationship in the Pension Code that would allow participants to enforce funding provisions. 
Lindberg
, 60 Ill. 2d at 275. The court reasoned that the statutory funding provisions at issue were no different than past provisions, which had not been construed as conferring vested rights. 
Lindberg
, 60 Ill. 2d at 275.

In 
McNamee
, plaintiffs filed a complaint in the circuit court alleging that an amendment to the Pension Code violated the pension protection clause. At issue was an amendment to a provision which involved the accumulation of a reserve to pay off the accrued liabilities for certain municipal police pension funds. Plaintiffs' complaint alleged that the refinancing allowed by the amendment diminished and impaired the pension benefits of participants because it would allow municipalities to contribute lower initial annual contributions to the police pension funds. Plaintiffs contended this refinancing would make the fund less secure, thereby violating constitutional rights of pension participants.

This court in 
McNamee
 exhaustively reviewed the debates from the convention regarding the purpose of the pension protection clause. We found that the “transcripts from the convention make clear that the purpose of the amendment was to clarify and strengthen the right of state and municipal employees to receive their pension benefits, but not to control funding.” 
McNamee
, 173 Ill. 2d at 440. We concluded that the pension protection clause “creates an enforceable contractual relationship that protects only the right to receive benefits.” 
McNamee
, 173 Ill. 2d at 446.

Plaintiffs contend that their claims are distinguishable from the claims at issue in 
Lindberg
 and 
McNamee
. Plaintiffs first argue that, even if the pension protection clause itself was not intended to control pension funding, the General Assembly can establish specific contribution levels by statute that become vested contractual rights belonging to the pension fund participants. Plaintiffs contend that the vested rights analysis conducted in 
Lindberg
 leaves open the question whether, in a future case, the General Assembly may create a vested right to pension funding.

 The presumption is that laws do not create private contractual or vested rights, but merely declare a policy to be pursued until the legislature ordains otherwise. 
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 104 (1990). A party asserting that a law creates a contractual right bears the burden of overcoming this presumption. 
Fumarolo
, 142 Ill. 2d at 104.

Plaintiffs present no cogent argument for why this pension funding provision creates a vested right where the one at issue in 
Lindberg
 did not. There is no vested right in the mere continuance of a law. 
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210, 215 (1994). The funding provisions contained in the Pension Code give no indication of a legislative intention to establish a contractual right. See 
Fumarolo
, 142 Ill. 2d at 105 (finding that tenure statute for teachers, although promissory in nature and designed to induce employees to accept employment, did not create a vested contractual right because of the lack of any clear evidence in the statute showing a legislative intent to contract). We therefore reaffirm 
Lindberg
 and reject the contention that the Pension Code establishes vested contractual rights to statutory funding levels.

Plaintiffs also argue that they have pleaded a claim under the pension protection clause because they alleged not only a funding claim, but also that their benefits are at risk. In 
McNamee
, we recognized that, although the pension protection clause protects benefits, not funding, a beneficiary need not wait until benefits are actually diminished to bring suit under the clause. 
McNamee
, 173 Ill. 2d at 446-47 (“ `The word “impaired” is meant to imply and to intend that if a pension fund would be on the verge of default or imminent bankruptcy, a group action could be taken to show that these rights should be preserved' ”), quoting 4 Record of Proceedings, Sixth Illinois Constitutional Convention 2926 (comments of Delegate Kinney). The appellate court ruled that the present claims are distinguishable from those in 
McNamee
, because the present claims contain allegations that underfunding has left the retirement systems in a “precarious state.”

These allegations of underfunding are insufficient as a matter law to constitute an impairment of benefits. Plaintiffs, counterplaintiffs, and intervenor have alleged only an opinion that present funding levels are insufficient, from a prudential standpoint, to meet the accrued future obligations of the funds. The claims contain no factual allegations that would support a finding that the funds at issue are “on the verge of default or imminent bankruptcy” such that benefits are in immediate danger of being diminished. We therefore reject the appellate court's conclusion that plaintiffs, counterplaintiffs, and intervenor have stated a cause of action under the pension protection clause.

We therefore find neither a vested contractual nor constitutional right for beneficiaries to enforce the level of state contributions previously mandated by Public Act 86–273. The framers of the Illinois Constitution were careful to craft in the pension protection clause an amendment that would create a contractual right to benefits, while not freezing the politically sensitive area of pension financing. In addition, the funding provisions contained in the Pension Code do not evince a legislative intent to create vested contractual rights in favor of beneficiaries. Without either a constitutional or contractual right to enforce the funding levels contained in Public Act 86–273, plaintiffs' fiduciary duty and section 1983 claims similarly fail. As we find that plaintiffs, counterplaintiffs, and intervenor have failed to state a cause of action on these grounds, we need not address whether the requested relief is barred by the doctrine of separation of powers.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed.