PATRICK HOULIHAN *et al.*, On Behalf Of Themselves And All Others Similarly Situated, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee (The City of Chicago Municipal Employees', Officers' and Officials' Annuity and Benefit Fund *et al.*, Nominal Defendants-Appellees).

First District (6th Division)   No. 1—97—1514

Opinion filed June 30, 1999.—Rehearing denied August 5, 1999.

590

Clinton A. Krislov and Robert J. Stein III, both of Krislov & Associates, Ltd., of Chicago, for appellants.

Lawrence Rosenthal, Corporation Counsel, of Chicago (Benna Ruth Solomon and Sonja D. Rajkovich, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Fagel & Haber, of Chicago, for appellee Firemen's Annuity & Benefit Fund.

JUSTICE BUCKLEY delivered the opinion of the court:

Participants in the City of Chicago's (the City) municipal employees' pension funds brought this suit as a derivative and class action against the City of Chicago, alleging that the City failed to comply with the requirements of the Illinois Pension Code (the Pension Code) (40 ILCS 5/1—101 *et seq.* (West 1996)) by not paying interest on money collected for the City's municipal pension funds. The City filed a motion to dismiss plaintiffs' second amended complaint pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (the Code of Civil Procedure). 735 ILCS 5/2—615, 2—619 (West 1996). The circuit court granted the City's motion and dismissed the first three counts of plaintiffs' complaint with prejudice on January 10, 1997.

Plaintiffs now seek review of the circuit court's order dismissing the complaint. On appeal they raise the following issues: (1) whether the Illinois Pension Code requires the City to pay "improvement interest" into municipal pension funds; (2) whether plaintiffs have a contractual right under the Illinois Constitution of 1970 to have the City pay interest into the funds; (3) whether the City must exercise its home rule powers to pay interest into the pension funds; and (4) whether the Local Governmental and Governmental Employees Tort

Immunity Act (the Immunity Act) (745 ILCS 10/2—101 *et seq.* (West 1994)) bars the plaintiffs from obtaining damages for underpayment to the pension funds.

## I. BACKGROUND

The five pension funds at issue in the instant case are: (1) the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund (Municipal Fund) (40 ILCS 5/8—173 (West.1996)); (2) the Policemen's Annuity and Benefit Fund (Policemen's Fund) (40 ILCS 5/5—168 (West 1996)); (3) the Firemen's Annuity and Benefit Fund (Firemen's Fund) (40 ILCS 5/6—173 (West 1996)); (4) the Laborers' and Retirement Board Employees' Annuity and Benefit Fund (Laborers' Fund) (40 ILCS 5/11—169 (West 1996)); and (5) the Park Employees' and Retirement Board Employees' Annuity and Benefit Fund (Park Fund) (40 ILCS 5/12—152 (West 1996)). All of the funds are financed by a combination of employee contributions deducted from salary, employer contributions made by the City, and investment earnings on the contributions. When an employee contributes to a fund, the City enters a credit to the employee's specific pension account in an amount certified by the pension board as the City's contribution. The City then levies a special property tax to finance its employer contributions to each of the pension funds. The amount of the special levy varies for each year and for each pension fund, but does not exceed employee contributions multiplied by a fixed statutory multiplier. However, due to the procedure for levying and collecting property taxes, the City actually makes its annual employer contribution two years in arrears.

The plaintiffs, as participants in four of the City's five pension funds, filed this suit as both a derivative and class action on behalf of the participants in all five of the City's funds to recover "improvement interest" allegedly owed to the funds for the delay in the City's contribution. The plaintiffs' second amended complaint alleged that the City must conduct an accounting, that the City breached its fiduciary duty to the pension funds, that the City breached its contract with the funds, and that the funds' trustees must comply with the Illinois Freedom of Information Act (5 ILCS 140/2(a) (West 1996)).[1]

The City filed a motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure on March 14, 1996. 735 ILCS 5/2—615, 2—619 (West 1996). In an order filed on January 10, 1997, the circuit court granted the City's motion and dismissed the first

---

[1]The circuit court dismissed plaintiffs' Illinois Freedom of Information Act (5 ILCS 140/2(a) (West 1996)) count without prejudice on December 13, 1996.

three counts of plaintiffs' complaint with prejudice. The circuit court first found that the Pension Code provides that monies contributed to the pension funds, including interest, are to be taken solely from the tax levy, and the pension funds at issue have requested and received the maximum allowable levy. Next, the court determined that the financing provisions of the Pension Code have not been rendered invalid by the adoption of home rule in Illinois because "the home rule provision in the Illinois Constitution is permissive" and, furthermore, the City has immunity from liability for an "injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." See 745 ILCS 10/2—103 (West 1994). Finally, the court found that the City has not breached its contract with the plaintiffs in violation of the Illinois Constitution of 1970 because benefits due to fund participants were not "diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

II. ANALYSIS

■ When determining the legal sufficiency of a complaint under section 2—615 of the Code of Civil Procedure, all well-pleaded facts are taken as true and all reasonable inferences from those facts are drawn in favor of the plaintiff. 735 ILCS 5/2—615 (West 1996); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490 (1996). A reviewing court must then determine whether the allegations in a complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *People ex rel. Sklodowski v. State of Illinois*, 182 Ill. 2d 220, 227-28 (1998). Similarly, when reviewing a motion to dismiss based on an affirmative defense under section 2—619 of the Code of Civil Procedure, this court may consider the parties' pleadings for defenses or defects that negate a plaintiff's cause of action or refute conclusions of law. 735 ILCS 5/2—619 (West 1996); *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 668 (1996). Thus, we review the dismissal of the plaintiffs' second amended complaint *de novo. Toombs v. City of Champaign*, 245 Ill. App. 3d 580 (1993).

A. THE ILLINOIS PENSION CODE

The plaintiffs first maintain that the circuit court erred in granting the City's motion to dismiss because the Pension Code requires that the City pay interest accrued on any contributions made after an employee contributes paycheck withholdings. Specifically, plaintiffs point to the following language in the Pension Code:

"If it is not possible or practicable for the city to make its contributions at the time that salary deductions are made, the city shall make such contributions as soon as possible thereafter, with

interest thereon to the time it is made." 40 ILCS 5/5—168 (West 1996).[2]

■ It is well settled that construction of a statute is a question of law, and on review, the appellate court will construe the statute independently of the trial court's judgment. *Chestnut Corp. v. Pestine, Brinati, Garner, Ltd.*, 281 Ill. App. 3d 719, 723 (1996). The primary object of statutory construction is to give effect to the true intent of the legislature. *Holland v. City of Chicago*, 289 Ill. App. 3d 682, 685-86 (1997). This inquiry necessarily begins with the language employed in the statute. *Holland*, 289 Ill. App. 3d at 686. Where a statute defines its own terms, those terms will be construed according to statutory definitions, but, in the absence of such definitions, the words of a statute will be given their plain and ordinary meanings. *Holland*, 289 Ill. App. 3d at 686. Of course, it is essential to read the statute as a whole, with all of its relevant provisions considered together. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). Statutes are to be construed to give full effect to each word, clause and sentence, so that no word, clause, or sentence is surplusage or void. *Chestnut Corp.*, 281 Ill. App. 3d at 724.

Prior to 1995, the Pension Code provided in relevant part:

"Financing. The city shall levy a tax annually upon all taxable property therein for the purpose of providing revenue for the fund.

\*\*\* Beginning with the year 1970 and each year thereafter the city council shall levy a tax annually at a rate on the dollar of the assessed valuation of all taxable property that will produce when extended an amount not to exceed the total amount of contributions by the policemen to the Fund made in the calendar year 2 years before the year for which the applicable annual tax is levied, multiplied by \*\*\* 2.00 for 1982 and for each year thereafter.
\*\*\*

On or before January 10 of each year, the board shall notify the city council of the requirement that the tax herein authorized be levied by the city council for that current year. The board shall compute the amounts necessary for the purposes of this fund to be credited to the reserves established and maintained within the fund; shall make an annual determination of the amount of the required city contributions; and shall certify the results thereof to the city council." 40 ILCS 5/5—168 (West 1994).

---

[2]This particular section of text comes from the Policemen's Fund statute, but the Firemen's Fund (40 ILCS 5/6—173 (West 1996)), Municipal Employees' Fund (40 ILCS 5/8—183 (West 1996)), Laborers' Fund (40 ILCS 5/11—169 (West 1996)), and Park Employees' Fund (40 ILCS 5/12—152 (West 1996)) all contain similar language.

Plaintiffs and the City disagree as to whether the special tax levy to the Pension Code creates a funding "source" or a funding "cap." Plaintiffs urge this court to find that since the funding provisions were enacted in 1963 and the legislature has not placed any express limits on the amount of the levy, the Pension Code cannot be read to create a funding cap. The City, on the other hand, asserts that under the language of the Pension Code no interest is required when the City levies the maximum tax authorized, as it has done here.

■ According to the statutes governing the different pension funds, the maximum allowable tax levy authorized by the Pension Code is the maximum amount that the City may contribute to the funds. See, e.g., 40 ILCS 5/5—168 (West 1996). Specifically, the Pension Code states:

> "The various sums, including interest, to be contributed by the city, shall be taken from the revenue derived from such tax or otherwise as expressly provided in this Section. Any moneys of the city derived from any source other than the tax herein authorized shall not be used for any purpose of the fund nor the cost of administration thereof, unless applied to make the deposit expressly authorized in this Section." 40 ILCS 5/5—168 (West 1996).

This language limits the tax levy that funds the City's pension contributions and forbids the use of other municipal revenues for contributions to the pension funds.

■ Even though the Pension Code provisions governing the Policemen's Fund and the Firemen's Fund were amended in 1995, the amended versions still maintain the limit on revenues that may be used for contributions to the funds. See 40 ILCS 5/5—168, 6—165 (West 1996). The statutes, as amended, state that although a tax levy may not exceed an amount equal to the total employee contributions to the pension fund made two years before the year of the levy times the statutory multiplier, the City has the option of not levying the special property tax in a given year, provided the City deposits an amount equal to the property tax. In other words, according to the new statutory language, not all sums of money contributed to the funds, including interest, have to come from the special property tax levy authorized by the Pension Code and the City may rely on other sources of funds. See 40 ILCS 5/5—168, 6—165, 8—173 (West 1996).

The 1995 amendments to the Pension Code have not changed the City's obligations. The only effect of the 1995 amendments is to allow the City to seek other sources of revenue "[i]n lieu of levying all or a portion of" the special property tax authorized by the Pension Code to satisfy its obligation to the funds. 40 ILCS 5/5—168 (West 1996). However, the amendments do not require that the City seek other

sources of revenue in addition to the special property tax. Thus, the language of the Pension Code still requires that the City not exceed the maximum allowable tax levy. In the case at bar, the parties do not dispute that the City has contributed the full statutory tax levy to each pension fund. As a result, the statute does not require the City to pay interest if it has contributed the statutory maximum. Plaintiffs' proposed interpretation of the statute would nullify the system of calculating maximum tax levies and capping employer contributions by requiring the City to increase the amount of the tax levy to raise additional funds to add funds in excess of the statutory requirement solely because of the method by which the county collector collects property taxes. See *Chestnut Corp.*, 282 Ill. App. 3d at 724.

Plaintiffs argue that this court's decision in *Ryan v. City of Chicago*, 148 Ill. App. 3d 638 (1986), supports their argument. We disagree. In *Ryan*, police pension fund members sought declaratory and injunctive relief and an accounting on interest earned and retained by the City on pension fund tax receipts collected for the pension funds. The court held that the City had to turn over any interest earned on the collected tax levy to the pension funds. *Ryan*, 148 Ill. App. 3d at 644. According to the court, tax receipts are collected and held for the benefit of the pension funds and not the City. *Ryan*, 148 Ill. App. 3d at 644. Unlike *Ryan*, plaintiffs in the case at bar have not alleged that the City holds the tax receipts after collection. In fact, the record shows that the City initially credits the funds and then later contributes the amount credited immediately after collecting the property tax levy. In this way, the City is contributing the full amount certified by the pension board and required by the Pension Code and does not hold any funds for its own use. Therefore, on this basis, and our reading of the language of the Pension Code, we hold that the Pension Code does not require the City to make interest payments to the pension funds when it contributes the statutory maximum under the statute.

### B. HOME RULE POWERS

Next, plaintiffs argue that the City may not avoid its statutory interest obligations by choosing not to exercise home rule powers available under the 1970 Illinois Constitution. According to the plaintiffs, the Pension Code requires that the City pay interest to fulfill its statutory obligations.

■ The Illinois Constitution of 1970, article VII, section 6(a), provides in part:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government

and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). This provision has been interpreted to mean that no state statute enacted prior to the Illinois Constitution of 1970 can serve to limit a home rule unit's powers of taxation, unless it is approved by a three-fifths majority of both houses and specifically expresses a restrictive purpose. *City of Rockford v. Gill*, 75 Ill. 2d 334, 341 (1979).

■ The circuit court's order dismissing the first three counts of plaintiffs' second amended complaint noted, "[t]he doctrine of home rule does not render all state statutes enacted prior to 1970 invalid." The circuit court concluded that since plaintiffs did not allege that the City enacted any local legislation in conflict with the Pension Code, the pre-1970 requirements of the Pension Code are valid. We agree.

Plaintiffs argue that the circuit court erred because the 1970 Constitution clearly states that a home rule unit's power to raise money is not limited by statutes effective prior to the effective date of the 1970 Illinois Constitution. See *Kotte v. Normal Board of Fire & Police Commissioners*, 269 Ill. App. 3d 517, 521 (1995). They contend that the City cannot claim that the language of the 1963 Pension Code precludes raising additional money to meet financial obligations. Furthermore, plaintiffs state that *Gill* is dispositive on this issue. *Gill*, 75 Ill. 2d at 339.

The City responds that a state statute does not obligate a home rule government entity to exercise its home rule powers. Specifically, the City states that in *Gill* the supreme court addressed a different issue, when an ordinance levying taxes for library purposes in excess of the statutory limit was found to be a valid exercise of the city's home rule powers. See *Gill*, 75 Ill. 2d at 337. The *Gill* court ultimately held that a home rule municipality has the power to levy a tax for its library in excess of the limit imposed by the state statute governing local libraries. *Gill*, 75 Ill. 2d at 339.

*Gill* does not support plaintiffs' assertion that the City has neglected its obligations under the Pension Code because *Gill* never addressed the issue of whether the City must levy a new tax to supplement its contributions to municipal employee pension funds. If the City was not contributing the statutorily prescribed maximum to the funds, then *Gill* would apply to the dispute at hand. Accordingly, we find that the City does not have an obligation to exercise its home rule powers to raise additional monies when the City has already contributed the statutory maximum to the pension funds.

## C. CONTRACTUAL RIGHT UNDER THE ILLINOIS CONSTITUTION

Third, plaintiffs argue that article XIII, section 5, of the 1970 Illinois Constitution grants an enforceable contractual right that compels the City to comply with obligations accrued under the Pension Code.

■ The Illinois Constitution establishes that the participants in a state or local pension program are parties to an enforceable contract that protects the right to receive benefits. See *McNamee v. State of Illinois*, 173 Ill. 2d 433, 439 (1996). Article XIII, section 5, of the 1970 Illinois Constitution specifically states:

> "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."
> Ill. Const. 1970, art. XIII, § 5.

The primary purpose in enacting this amendment was to eliminate uncertainty as to whether state and local governments were obligated to pay pension benefits to their employees. *Sklodowski*, 182 Ill. 2d at 228. Yet, as the transcripts from the Constitutional Convention make clear, section 5 strengthened the right of state and municipal employees to receive their pension benefits, but not to control funding. *McNamee*, 173 Ill. 2d at 440. The Illinois Supreme Court has consistently invalidated amendments to the Pension Code that diminish benefits. See, *e.g.*, *Felt v. Board of Trustees of the Judges Retirement System*, 107 Ill. 2d 158 (1985) (finding unconstitutional an amendment to the Pension Code that changed the salary base for determining pension benefits). However, the supreme court made clear in *People ex rel. Illinois Federation of Teachers v. Lindberg*, 60 Ill. 2d 266, 271 (1975), that the pension protection clause in the Illinois Constitution does not create a contractual basis for pension fund participants to expect a particular level of funding but, rather, it only creates a contractual right that they receive benefits due at the time of retirement.

In the case at bar, the circuit court based its finding that the City's conduct had not "diminished or impaired" pension benefits on the Illinois Supreme Court's decision in *Peters v. City of Springfield*, 57 Ill. 2d 142, 152 (1974). In *Peters*, municipal employees challenged the constitutionality of a city ordinance that reduced the mandatory retirement age of policemen and firemen from 63 to 60. The supreme court concluded:

> "[T]hat the purpose and intent of the constitutional provision was to insure that pension rights of public employees which had been earned should not be 'diminished or impaired' but that it was not intended, and did not serve, to prevent the defendant City from reducing the maximum retirement age, even though the reduction

might affect the pensions which plaintiffs would ultimately have received." *Peters*, 57 Ill. 2d at 152.

The City argues that the Illinois Supreme Court's recent decision in *Sklodowski* is instructive on this issue.[3] We agree. In *Sklodowski*, beneficiaries in various state employee pension funds brought an action to compel the state to appropriate monies necessary to meet statutory funding obligations required by the Pension Code.[4] The plaintiffs alleged that newly enacted funding provisions required the state to contribute additional amounts so as to meet the annual normal cost of the fund, and this would also satisfy the amount necessary to amortize the unfunded liability for each fund over a 40-year period. *Sklodowski*, 182 Ill. 2d at 223. The plaintiffs argued that the state's failure to comply with the funding provisions violated section 5 of article XIII and impaired the contract rights of the fund participants. *Sklodowski*, 182 Ill. 2d at 224.

In *Sklodowski*, the supreme court relied on *McNamee* and *Lindberg* and concluded that the pension protection clause contained in section 5 of article XIII of the 1970 Illinois Constitution does not establish a vested contractual right to statutory funding levels. *Sklodowski*, 182 Ill. 2d at 232.

■ Plaintiffs argue that the case at bar is not a funding level dispute, thereby rendering the City's argument inapposite. However, as noted above, there is no dispute that the City has contributed the maximum amount allowable to the funds. As a result, under the Pension Code the City cannot contribute additional money to the pension funds. Although the participants in the various pension funds have an enforceable contractual relationship, this right only guards against diminishing or impairing benefits. Plaintiffs have not alleged that their current benefits have been decreased or terminated, or that the pension funds are in financial jeopardy. Therefore, we find that the City did not violate plaintiffs' rights under the Illinois Constitution of 1970.

### D. TORT IMMUNITY ACT

Plaintiffs next assert that the circuit court erred by holding that the Illinois Local Governmental and Governmental Employees Tort

---

[3]Plaintiffs' brief relies on this court's decision in *Sklodowski* (*People ex rel. Sklodowski v. State of Illinois*, 284 Ill. App. 3d 809 (1996)) instead of the more recent supreme court decision which overruled the appellate court's holding.

[4]While the appeal was pending, the General Assembly repealed the act at issue and amended the funding provisions for each of the retirement systems at issue. *Sklodowski*, 182 Ill. 2d at 224.

Immunity Act (the Tort Immunity Act) applied to this case. 745 ILCS 10/2—101 *et seq*. (West 1996). Plaintiffs argue that the Tort Immunity Act only applies to tort liabilities and the Pension Code obligations are based on contract, not tort.

Section 2—103 of the Immunity Act provides that "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2—103 (West 1996). According to the Tort Immunity Act's definitions, an " '[i]njury' means death, injury to a person, or damages to or loss of property. *** 'Injury' includes any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois ***." 745 ILCS 10/1—204 (West 1996).

The City argues that the plaintiffs have alleged that the City caused a loss to the pension funds by depriving the funds of money to which the participants are entitled. The City contends that this is the type of injury that falls within the coverage of the Tort Immunity Act. Thus, it is the City's position that it is immune from liability when it fails to adopt an enactment or enforce a law.

■ In the *Ryan* decision, this court did not rely on the Tort Immunity Act in its analysis. *Ryan*, 148 Ill. App. 3d 638. Therefore, in the absence of any case law supporting the City's argument, we find that the Immunity Act did not act as a bar to plaintiffs bringing the case at bar.

### E. STANDING

Finally, the City notes that the claims against the Laborers' Fund and the Park Fund are invalid. The City states that plaintiffs' second amended complaint fails to name any participant in the Laborers' Fund as a plaintiff and, as a result, this claim should be summarily dismissed because no plaintiff has been injured by the alleged violation. *Kluk v. Lang*, 125 Ill. 2d 306, 314-15 (1988). Also, the second amended complaint failed to allege that the only Park Fund participant is an employee of the City. According to article 12 of the Illinois Pension Code, the City only has to make pension fund contributions for park employees who were transferred to City employment pursuant to the Chicago Park and City Exchange of Functions Act of 1957 (70 ILCS 1545/0.01 *et seq*. (West 1996)). See 40 ILCS 5/12—120 (West 1996). Plaintiffs have not alleged that this legislation applies to Park Fund participant Smith.

For aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

ZWICK and QUINN, JJ., concur.

