SECOND DIVISION 

March 9, 2004

Nos. 1-02-3557, 1-02-3688 and 1-02-3894, Consolidated

NEW HEIGHTS RECOVERY AND POWER, LLC, formerly known as CGE Ford Heights LLC; and CGE FULTON, LLC, 

Plaintiffs-Appellees and Cross-Appellants,

v.

GLEN BOWER, as Director of the Department of Revenue, and THE DEPARTMENT OF REVENUE, 

Defendants-Appellants and Cross-Appellees

(Commonwealth Edison Company, 

Defendant;

U.S. Bank Trust National Association, formerly known as First Trust Of Illinois, National Association, as Liquidating Trustee of the CGE Ford Heights Liquidating Trusts, formerly as Indenture Trustee, 

Intervening Plaintiff).

________________________________________________

THE VILLAGE OF ROBBINS and ROBBINS RESOURCE RECOVERY PARTNERS, L.P.,

Plaintiffs-Appellees and Cross-Appellants, 

v.

KEVIN WRIGHT, MARY FRANCES SQUIRES, RUTH KRETSCHMER, TERRY HARVILL, EDWARD HURLEY, RICHARD MATHIAS, and RICHARD KOLHAUSER, as Commissioners of the Illinois Commerce Commission; GLEN BOWER, as Director of the Department of Revenue, 

Defendants-Appellants and Cross-Appellees

(Commonwealth Edison Company, 

Defendant-Appellant). 

NEW HEIGHTS RECOVERY AND POWER, LLC, formerly known as CGE Ford Heights LLC; CGE FULTON, LLC; THE VILLAGE OF ROBBINS; and ROBBINS RESOURCE RECOVERY PARTNERS, L.P.,

Plaintiffs-Appellees,

v.

COMMONWEALTH EDISON COMPANY; RICHARD MATHIAS, RICHARD KOLHAUSER, RUTH KRETSCHMER, TERRY HARVILL, and EDWARD HURLEY, as Commissioners of the Illinois Commerce Commission,

Defendants-Appellants

(U.S. Bank Trust National Association, formerly known as First Trust Of Illinois, National Association, as Liquidating Trustee of the CGE Ford Heights Liquidating Trusts, formerly as Indenture Trustee, 

Intervening Plaintiff-Appellee;

The Department of Revenue,

Intervenor).

)))))))))

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

 

)

)

)

)

)

)

)

)

)

)

)

)

) 

)

)

)

)

)

))

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Nos. 00 CH 3157

96 CH 2560

00 CH 3754

Honorable

Robert Boharic

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

The issue in this case is whether plaintiffs have a constitutionally protected interest in the continuation of a specific rate of reimbursement for electricity generated and sold to a public utility company.  The trial court concluded that such rights existed and prohibited application of a legislative enactment abolishing that rate.  Because we conclude that a specific rate of reimbursement once mandated by the legislature does not create a constitutionally protected interest in the continuation of that rate, we reverse.

Plaintiffs, New Heights Recovery & Power, LLC, CGE Fulton, LLC, the Village of Robbins, and Robbins Resource Recovery Partners, L.P., filed two separate complaints against defendants.  They included Commonwealth Edison (ComEd), commissioners of the Illinois Commerce Commission (ICC), the Director of the Illinois Department of Revenue (Department) and the Department.  Both complaints question whether Public Act 89-448, amending section 8-403.1 of the Public Utilities Act (220 ILCS 5/8-403.1 (West 1996)) (hereinafter, Retail Rate Law), applies to disqualify plaintiffs from receiving a special rate of reimbursement for electricity sold to ComEd.  Pub. Act 89-448, eff. March 14, 1996 (hereinafter 1996 amendment).

The Retail Rate Law was adopted in 1987 to "encourage the development of alternate energy production facilities for the disposal of solid waste."  Pub. Act 85-882, eff. Nov. 5, 1987 (adding Ill. Rev. Stat. 1987, ch. 111 2/3, par. 8-403.1).  The Act directed electric utility companies to enter into 20-year contracts to buy electricity from qualified solid waste energy facilities (labeled with the acronym QSWEF) at a "retail rate" that was higher than the market rate.  Ill. Rev. Stat. 1987, ch. 111 2/3, par. 8-403.1(c).  In return, the utility companies would receive tax credits from the state equal to the difference between the retail rate and the market rate.  Ill. Rev. Stat. 1987, ch. 111 2/3, par. 8-403.1(d).

In reliance on the Retail Rate Law as adopted in 1987, each plaintiff developed an incinerator plant that burned used tires as a source of energy.  These plants were certified by the ICC as QSWEFs eligible for the special rate of reimbursement.  As QSWEFs, plaintiffs entered into 20-year contracts with ComEd for the purchase of electricity at the special rate.  The contracts contained the following provision:

"Service and billing, hereunder *** shall continue for 20 years from the date Customer's [q]ualifed [s]olid [w]aste [e]nergy [f]acility begins commercial operation, unless terminated earlier by the written agreement of [the parties], the Customer loses its status as a [QSWEF] [citation] or the Company ceases to obtain full Public Utilities Revenue Tax Credits [citation] associated with purchases under this [c]ontract for any reason."

The 1996 amendment to the Retail Rate Law, entitled "An Act to abolish incinerator subsidies under the retail rate law," redefined a QSWEF as one that uses methane gas generated from landfills as its primary fuel.  Pub. Act 89-448, eff. March 14, 1996.  Because plaintiffs' plants do not fall within the new definition, ComEd ceased paying plaintiffs the retail rate after the effective date of the 1996 amendment.  The Department affirmed ComEd's decision in a letter dated April 3, 1996.  The Department advised ComEd that it was no longer required to buy energy from incinerator plants at the retail rate or eligible for the tax credit previously available.

The plaintiffs' lawsuits alleged the 1996 amendment could not apply to disqualify them as QSWEFs eligible to receive the special rate of reimbursement under the Retail Rate Law.  The complaints also contained breach of contract claims against ComEd.  The trial court dismissed the state defendants on sovereign immunity grounds.  In an earlier appeal, we reviewed the dismissal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  We affirmed in part, dismissed in part and remanded the cause with directions that the trial court consider the remaining claims.  
CGE Ford Heights, L.L.C. v. Miller
, 306 Ill. App. 3d 431, 714 N.E.2d 35 (1999)
.

On remand, the parties filed cross-motions for summary judgment, seeking a declaration on the application of the 1996 amendment.  The state defendants also moved to dismiss certain claims under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2000)).  The trial court dismissed plaintiffs' claims alleging breach of contract by the state and those challenging the constitutionality of the amendment.  The trial court then granted plaintiffs' motions for summary judgment on some remaining claims and denied defendants' cross-motions.  The court ruled that the 1996 amendment did not apply to plaintiffs and enjoined ComEd and the state defendants from denying plaintiffs benefits under the Retail Rate Law.  Plaintiffs' counts against ComEd for breach of contract were transferred to the law division.

Defendants now appeal under Rule 304(a) (155 Ill. 2d R. 304(a)), arguing plaintiffs are no longer eligible for benefits under the Retail Rate Law.  Plaintiffs cross-appeal, arguing the trial court erred in dismissing claims challenging the constitutionality of the 1996 amendment and alleging breach of contract by the state.  Defendants' motion to stay the trial court order pending appeal has been granted.  

We review 
de novo
 a trial court order granting summary judgment (
City of Chicago v. Holland
, 206 Ill. 2d 480, 487, 795 N.E.2d 240 (2003)), as well as an order dismissing claims under section 2-615 of the Code (
Brandt v. Boston Scientific Corp.
, 204 Ill. 2d 640, 644-45, 792 N.E.2d 296 (2003)).

We first address defendants' contention that the trial court lacked jurisdiction to consider plaintiffs' claims against the state defendants on sovereign immunity grounds.  Defendants cite our earlier decision in this matter
 where we affirmed the trial court order dismissing plaintiffs' claims against the state on grounds other than sovereign immunity.  
CGE
, 306 Ill. App. 3d 431.  Defendants maintain that since 
CGE
, "two events have undermined the basis of [our] decision[]" that sovereign immunity concerns are not implicated by plaintiffs' complaints: (1) the state was added as a party; and (2) our supreme court issued an opinion that analyzed retroactivity under statutory construction principals.  These two events do not alter the conclusion reached in 
CGE
.

The basis for our decision to affirm the trial court's dismissal of plaintiff's claims against the state was plaintiffs' failure to state a cause of action.  
CGE
, 306 Ill. App. 3d at 439.  Without a valid claim against the state, there was no need to reach the sovereign immunity issue.  
CGE
, 306 Ill. App. 3d at 439.  We again find that sovereign immunity concerns are not implicated by plaintiffs' complaints.  As discussed below, plaintiffs do not have a valid claim for breach of contract against the state.  We also conclude, as we did in 
CGE
, that absent a valid breach of contract claim, plaintiffs' claims for injunctive and declaratory relief against the state have no place in the Court of Claims because they require consideration of the constitutionality of the 1996 amendment.  See 
CGE
, 306 Ill. App. 3d at 439-40.  "Since the Court of Claims has no power to construe the constitutionality of a statute, its injunctive powers lack a predicate in this case."  
CGE
, 306 Ill. App. 439-40.

We turn to the merits of this appeal.  We must decide whether the 1996 amendment abolishes plaintiffs' right to the special rate of reimbursement under the Retail Rate Law.  Because the parties focus on the retroactivity of the amendment, we look first to the principles governing retroactive application of amendatory acts.  In 
Commonwealth Edison Co. v. Will County Collector
, 196 Ill. 2d 27, 33, 749 N.E.2d 964 (2001), our supreme court adopted the approach to retroactivity outlined by the United States Supreme Court in 
Landgraf v. USI Film Products
, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994).  
Commonwealth Edison
, 196 Ill. 2d at 36-39.  Under 
Landgraf
, if the legislature has expressed the temporal reach of a statutory amendment, then, absent a constitutional prohibition, the legislative intent will be given effect.  
Commonwealth Edison
, 196 Ill. 2d at 38.  If the legislature has not expressed the temporal reach, then the court must decide whether applying the statute would have a retroactive impact by impairing rights a party possessed when he acted, increasing a party's liability for past conduct or imposing new duties with respect to transactions already completed.  
Commonwealth Edison
, 196 Ill. 2d at 38.  Absent retroactive impact, the amended statute will apply.  
Commonwealth Edison
, 196 Ill. 2d at 38.

While affirming the adoption of 
Landgraf
, the court in 
Caveney v. Bower
, 207 Ill. 2d 82, 94, 797 N.E.2d 596 (2003), said "it is virtually inconceivable that an Illinois court will ever go beyond step one of the 
Landgraf
 approach," which "requires a court to ascertain whether the legislature has clearly indicated the temporal reach of the amended statute."  Relying on 
People v. Glisson
, 202 Ill. 2d 499, 782 N.E. 2d 251 (2002), the court cited section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2000)), as clear indication by the legislature that, unless otherwise expressed in the amendment itself, all statutory amendments should apply prospectively if they are substantive in nature.  
Caveney
, 207 Ill. 2d at 92.  Procedural changes to existing laws may be applied retroactively.  
Caveney
, 207 Ill. 2d at 92.

We conclude that the legislature expressed the temporal reach of the 1996 amendment by entitling the amendment: "An Act to abolish incinerator subsidies under the retail rate law."  Pub. Act 89-448, eff. March 14, 1996.  To "abolish" means "[t]o annul or destroy, esp. an ongoing practice or thing."  Black's Law Dictionary 5 (7th ed. 1999).  Under the plain language of the title, we believe the legislature intended that the 1996 amendment abolish subsidies formerly available to incinerator plants from the date of the amendment forward.  We note that we would reach the same result if we were to apply section 4 of the Statute on Statutes.  Because the 1996 amendment is a substantive change in the law--it abolishes a previously available subsidy--it must be applied prospectively.

Because we find that the 1996 amendment applies prospectively, we need not consider whether application of the amendment to plaintiffs is constitutionally prohibited.  We are unaware of authority that would support a finding that prospective application of amendatory acts implicates constitutionally protected rights.  
Caveney
 illustrates this point.  The plaintiffs in 
Caveney
 were shareholders in a corporation treated as a subchapter S corporation for tax purposes.  
Caveney
, 207 Ill. 2d at 84.  At issue was a 1999 amendment to section 201(k) of the Illinois Income Tax Act (35 ILCS ILCS 5/201(k) (West 1996)) that would allow shareholders of a subchapter S corporation to receive tax credits for research and development expenditures.  
Caveney
, 207 Ill. 2d at 85.  The plaintiffs sued the state, seeking a return of taxes paid before the effective date of the amendment.  
Caveney
, 207 Ill. 2d at 85.  The state argued retroactive application of the amendment was impermissible because it would affect vested rights held by the state.  
Caveney
, 207 Ill. 2d at 91.  The supreme court, relying on section 4 of the Statute on Statutes, held the amendment applied prospectively because it constituted a substantive change in the law by establishing a tax credit for S corporation shareholders that previously did not exist.  
Caveney
, 207 Ill. 2d at 95-96.  Due to the prospective nature of the amendment, the court did not engage in a constitutional analysis.

To the extent plaintiffs argue they held a constitutionally protected interest in the 
continuation
 of the former law, we disagree.  "A right, to be within the protection of the constitution, must be a vested right.  It must be something more than a mere expectancy based upon an anticipated continuance of an existing law."  
Dodge v. Board of Education of City of Chicago
, 364 Ill. 547, 552, 5 N.E.2d 84 (1936).  Our supreme court has held there is no vested right in the mere continuation of a law and the legislature has an ongoing right to amend a statute.  See 
Premier Property Management, Inc. v. Chavez
, 191 Ill. 2d 101, 109, 728 N.E.2d 476 (2000); 
People ex rel. Sklodowski v. State
, 182 Ill. 2d 220, 232, 695 N.E.2d 374 (1998); 
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282, 291, 664 N.E.2d 36 (1996); 
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210, 215, 632 N.E.2d 1035 (1994).  Because plaintiffs did not have a vested right in the continuation of the Retail Rate Law as adopted in 1987, prospective application of the 1996 amendment to plaintiffs is not prohibited by the constitution. 

Plaintiffs also argue that application of the 1996 amendment would impair plaintiffs' contracts with ComEd.  See Ill. Const. 1970, art. I, §16; 
Panzella v. River Trails School District 26
, 313 Ill. App. 3d 527, 535, 729 N.E.2d 954 (2000) (Illinois Constitution prohibits the legislature from enacting laws that impair the obligation of contracts).  Plaintiffs allege they possessed an "unquestioned right" under the ComEd contracts to sell electricity to ComEd at the retail rate for a period of 20 years.  But plaintiffs' "unquestioned right" was explicitly limited by the following escape clause contained in each of the contracts: 

"Service and billing, hereunder *** shall continue for 20 years from the date Customer's [QSWEF] begins commercial operations, 
unless
 terminated earlier by the written agreement of [the parties], 
the Customer loses its status as a [QSWEF] (see 83 Ill. Adm. Code §445.50) or the company ceases to obtain full Public Utilities Revenue Tax Credits *** associated with purchases under this [c]ontract for any reason
."  (Emphasis added.)

The contracts contemplated, and were subject to, the possibility that plaintiffs would lose their status as QSWEFs under the Retail Rate Law and that ComEd would no longer be eligible for the tax credit associated with paying plaintiffs the higher rate.  The amendment merely provided the method by which plaintiffs and ComEd were no longer eligible for benefits under the Retail Rate Law.

Plaintiffs argue the escape clause was not triggered because plaintiffs' status as QSWEFs was not terminated by an agency or court decision.  Plaintiffs cite section 445.50(d) of the Illinois Administrative Code, referred to in the escape clause, which requires a QSWEF to notify the ICC and public utility companies "within 30 days of the date of a decision by a court or agency of competent jurisdiction in which the facility loses its status under the Act or this Part."  83 Ill. Adm. Code §445.50 (1996).  Plaintiffs' argument is unpersuasive.  The escape clause is triggered when any one of the three events occur: (1) the contract is terminated by written agreement of the parties; (2) plaintiffs lose their status as QSWEFs; or (3) ComEd ceases to obtain the tax credit associated with the purchase of electricity from incinerator plants.  It is undisputed that ComEd was informed by the Department that under the 1996 amendment ComEd would no longer be eligible for the tax credit previously available, thereby triggering the third event.   

In sum, plaintiffs do not have a constitutionally protected interest in the continuation of the Retail Rate Law as adopted in 1987.  The 1996 amendment applies prospectively from its effective date to abolish subsidies formerly available to plaintiffs.  

We now consider plaintiffs' arguments on cross-appeal, challenging the trial court's dismissal of their claims alleging breach of contract against the state and challenging the constitutionality of the 1996 amendment.

Plaintiffs first argue that the 1996 amendment unconstitutionally impairs plaintiffs' contract with the state.  Plaintiffs' argument is premised on a finding that the Retail Rate Law, as adopted in 1987, created a contract between plaintiffs and the state.  We find that no such contract existed.

A law is presumed to declare a policy to be pursued until the legislature declares otherwise and not to create private contractual or vested rights.  
National R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co.
, 470 U.S. 451, 466, 84 L. Ed. 2d 432, 446, 105 S. Ct. 1441, 1451 (1985).  A party asserting contractual rights created through legislation has the burden of overcoming this presumption.  
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 104, 566 N.E.2d 1283 (1990).  In deciding whether a statute was intended to create a contractual relationship between the state and the affected party, the court must examine the language of the statute.  
Fumarolo
, 142 Ill. 2d at 104.  A finding that a legislative enactment creates a contract with the state is warranted only when there exists clear evidence that the legislature intended such result.  See 
Fumarolo
, 142 Ill. 2d at 105. 

Plaintiffs argue the language and circumstances surrounding the Retail Rate Law show an intent by the legislature to enter into contracts with plaintiffs.  Plaintiffs cite the original purpose of the statute to encourage development of alternate energy production plants for the disposal of solid waste.  Plaintiffs also cite language in the statute itself requiring utility companies to enter into 20-year contracts with certified QSWEFs.  Neither the purpose nor the language of the Retail Rate Law evidences a clear legislative intent to be bound under contract.  
Cf
. 
Indiana ex rel. Anderson v. Brand
, 303 U.S. 95, 82 L. Ed. 685, 58 S. Ct. 443 (1938) (legislative intent to create contract shown by legislature's use of the term "contract" to describe the relationship between the parties).  To the contrary, the statute merely provides incentive for the development of incinerator plants by requiring public utility companies, not the state, to enter into 20-year contracts with QSWEFs for the sale of electricity at a special rate of reimbursement.

Plaintiffs next argue the 1996 amendment constitutes special legislation.  The legislature is prohibited under the Illinois Constitution from conferring a special benefit or exclusive privilege on a person or class to the exclusion of others similarly situated.  Ill. Const. 1970, art. IV, §13; 
In re Petition of the Village of Vernon Hills
, 168 Ill. 2d 117, 122, 658 N.E.2d 365 (1995).  The special legislation clause of the Illinois Constitution does not protect against all classifications.  
In re Estate of Jolliff
, 199 Ill. 2d 510, 519, 771 N.E.2d 346 (2002).  It protects against arbitrary classifications that discriminate in favor of a select group without a sound and rational basis.  
Jolliff
, 199 Ill. 2d at 519.

Plaintiffs maintain the 1996 amendment violates the special legislation clause because it confers a special benefit to owners of methane-burning plants to the exclusion of incinerator plants.  The weakness in plaintiffs' argument is the absence of facts negating a legitimate state purpose for the classification.  Plaintiffs' failure to plead such facts is sufficient ground to affirm the dismissal of plaintiffs' claim that the 1996 amendment constitutes special legislation.  See 
Chandler v. Illinois Central R.R. Co.
, 207 Ill. 2d 331, 798 N.E.2d 724 (2003).  Regardless, we find sufficient facts in this case that the 1996 amendment was enacted with several legitimate purposes in mind, including: (1) to curtail the harmful health concerns associated with the burning of solid waste; (2) to discourage solicitation of out-of-state waste for the purpose of obtaining greater subsidies under the Retail Rate Law; and (3) to correct the mistaken belief that landfill space in Illinois is scarce.

Plaintiffs also challenge the constitutionality of the 1996 amendment on single-subject grounds.  "[A] legislative enactment violates the single-subject requirement only when the statute, on its face, clearly embraces more than one subject."  
People v. Dunigan
, 165 Ill. 2d 235, 254-55, 650 N.E.2d 1026 (1995).  The single-subject rule is not a limitation on the comprehensiveness of a subject but rather is designed to prevent the joinder of incongruous and unrelated matters in one statute.  
Dunigan
, 165 Ill. 2d at 255.  In considering whether a statute embraces more than one subject, our supreme court has held the term "subject," in the constitutional sense, is comprehensive in scope and must be liberally construed.  
Dunigan
, 165 Ill. 2d at 255.

Plaintiffs argue the 1996 amendment violates the single-subject rule because the original subject of House Bill 1523, which became Public Act 89-448, concerned the Service Occupation Tax Act (35 ILCS 115/1 
et seq.
 (West 1996)).  See 89th Ill. Gen. Assem., Senate Proceedings, May 23, 1995, at 33 (House Bill 1523 introduced to exempt dental appliances from sales tax).  When introduced in the Senate, a conference committee was held wherein the text of the original bill was deleted in its entirety and what was later adopted as the 1996 amendment was added in its place.  Relying on 
Dunigan
, plaintiffs argue the amendment must be struck down as unconstitutional because the Service Occupation Tax Act is wholly unrelated to the Retail Rate Law.

In 
Dunigan
, the court rejected a single-subject challenge where the statute under attack originated as a bill to make feticide a criminal offense but was later amended by deleting the bill's original text and replacing it with a paragraph expanding the types of felonies that trigger the habitual offender statute.  
Dunigan
, 165 Ill. 2d at 251.  The court rejected the challenge, finding that the bill, from inception to passage, related to a single-subject: amendments to the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 1-1 
et seq
.).  
Dunigan
, 165 Ill. 2d at 255-56.

Plaintiffs argue under 
Dunigan
 that the 1996 amendment is unconstitutional because it does not relate to the original text of House Bill 1523.  To the contrary, applying the term "subject" liberally, we find that House Bill 1523 as originally introduced related to the subject of taxation.  So, too, does the 1996 amendment.  There is no single-subject violation under these facts.

Finally, plaintiffs raise a three-readings challenge to the constitutionality of the 1996 amendment.  See Ill. Const. 1970, art. IV, §8(d).  We need not address this issue because plaintiffs concede their argument is barred by the "enrolled bill doctrine" as affirmed by our supreme court in 
Friends of Parks v. Chicago Park District
, 203 Ill. 2d 312, 786 N.E.2d 161 (2003).

We reverse the grant of summary judgment for plaintiffs and against defendants.  The order transferring plaintiffs' breach of contract claims against ComEd to the law division is reversed and those counts are dismissed with prejudice in light of our decision.  Finally, we affirm the dismissal of plaintiffs' claims alleging breach of contract against the state defendants and challenging the constitutionality of the 1996 amendment.

Affirmed in part and reversed in part; stay vacated.

WOLFSON, P.J., and GARCIA, J., concur.